Evans, J.
delivered the opinion of the Court.
The substantial difference between this case and the case of McBee v. Hoke, is, that in that case Borum the-Coroner was entitled to hold over until a successor should be appointed and enter on the duties of his office. In this case, the tenure of office is four years.. This might have been sufficient for the decision of that case; but the Judge who delivered the opinion of the Court does not rest the case upon that ground alone, but assumes the broad ground that Borum being found in an office, of which he had been the incumbent many years, the plaintiffs had a right to regard him as Coroner, and his acts for them as good. “ One in office, and transacting its duties, is supposed to be rightfully there, and so far as third persons are concerned legalizes his acts.” These propositions, although not absolutely necessary to be affirmed, *94 in that case, and which may be supposed to be mere dicta, j pr0p0se t0 shew are supported by all the authorities. They have their origin in the well known and long recognized distinction between an officer defacto and one dejure; such a distinction, the necessities of society render absolutely necessary. There would be no security in our titles to property, if at any time afterwards they could be called in question, because the Judge before whom renunciations of dower, or inheritance, had been taken; the Magistrate before whom probate had been made; — the Register who had recorded them, or the Ordinary who had made orders of sale, had omitted to take the oaths of office, to give a bond, or to do some other act required of him as a guaranty for the faithful performance of the duties of his office. These evils are very strongly put, by the late Judge Nott, in the case of Taylor v. Skrine, and in the N. York cases hereafter referred to.
The reason of the rule, and the rule itself, embrace every officer from the highest to the lowest. The acts of a king de facto are as binding as if he were in office by legal right, so long as those whom he governs acquiesce in his exercise of power.
I do not undertake to say that in an organized state of society under a regular government, -the acts of an usurper, of one who obtrudes himself into an office, without color of claim, would be binding; but where the electing or appointing power has conferred the office upon him, and he" is in the actual discharge of its duties, without his title being questioned in any legal way, the community in which he lives have a right to regard him asa legal officer, and his acts, as to them, will be as valid as if he wore on his forehead, to be read by every one, the evidences of his appointment and qualification. If it were otherwise there could be no guaranty or security for the validity of the official acts of any officer. Where would any one go to ascertain whether a Judge had taken the oaths of office? Until very recently there was no law directing any roll of Magistrates to be kept in any office. At first they were to qualify before the Governor, or some one appointed by him. Afterwards, they were directed to qualify before any two justices; but no record was kept of the fact of qualification. It is the appointment that confers the office, as was decided by the Supreme Court of the United States in the case of Maybury v. Madison. The omission to qualify by giving bond or taking the oaths is cause of forfeiture; but so long as the officer appointed continues to discharge the ■duties of his office, his official acts, as to third persons, are legal. The law which requires the bond, or the oath, is, as was said in McBee v. Hoke, ¡merely directory. These do not make the officer, but are the guaranties which he is required to give for the faithful performance of the duties. To *95 tbe general rule in relation to the acts of an officer defacto there seems to be some exceptions, but none that affects the proposition above stated, as to the rights of third persons. To entitle one to claim the emoluments of an officer, or the privileges conferred by it, he must shew, if his right be questioned, that he is in office de jure, as in the case of Allen v. McNeill, where one claimed prize money as an officer, it was held he ought to prove himself such: his having acted would not be sufficient, where his being an officer is the very gist of his action. Another exception is, that made in the case of the State v. Hayward. That was an indictment for perjury. The affidavit on which the perjury was assigned was before a Magistrate (Mitchell) who had taken the oaths of office, but not before one authorized to administer them. It was held that the allegation in the indictment, that the alleged false oath was taken before one legally competent to administer an oath, was one to be strictly proved. So also in the case of the People v. White, some of the Senators who then composed, in part, the Court for the correction of in the State of New York, were of opinion that where a capital case was carried up on writ of error, the Court might inquire into the constitutional right of certain persons to sit on the trial as component parts of the Court. But (except in the first class of cases, where the right claimed depends on the fact that the party is an officer) it would seem from the cases, that the presumption of the legal right to an office arises prima facie from the actual discharge of its duties ; but this is a rebutable presumption, and its effects'destroyed by proof to the contrary. But in cases where the official acts of one elected or appointed to office, who is in the actual discharge of the duties, affect the civil rights of third persons, I do not find any authority for saying that the acts of such officers are invalid for any irregularity in the appointment or omission to do what is required as a guaranty for the faithful performance of the duties of his office. By the Act of 1778, justices were required to sign a roll, but in the case of the State v. Billy, it was held that the omission to do this did not invalidate his acts.
1 Mill C. R. 459.
McC.
^ Wen ,520'
3 c 432 Rex. v. -_
2N.& McC. 356>
2 Speers’ 5 '
In the case of McBee v. Hoke it is said that one in office, transacting the duties, is supposed to be rightfully there, and so far as third persons are concerned, that presumption legalizes his acts; that the statuary provision requiring a Coroner to give bond, is merely directory, and the omission did not affect the legality of his acts. In the case of the State v. Hill, one David R. Coleman, upon information that he been appointed a justicé of the quorum, but that the name had been inserted in the resolution as Daniel Coleman, had qualified and acted; it was held that his official acts were binding as an officer de facto, on the authority of the case of McBee v. Hoke.
2 Tread. 696.
6 Wm. & Mary, Lutw. 508.
3 Camp. 432.
7 Johns. 554.
9 Johns. 133.
5 Wend. 231.
In Taylor v. Skrine, a motion was made to set aside a decree made by F; A. Deliesline, Esqr., who had been commissioned as Judge by the Governor, under the Act of 1799. The Court refused the motion, although it was clear, and so after-wards decided, that the exercise of such power by the Govern- or was in violation of the constitution. The Court say, the public acts of officers de facto are often valid although the authority under which they act is void. In this case the Court refer to the cases of the People v. Collins, and McInstrey v. Tanner, hereinafter mentioned as authority.
I do not find many English cases on the subject. In 16 Viner Ab. 114, there are several quoted, and some of them of great antiquity. Among them is the case of Knight v. The Corporation of Wells. In that case a Mayor had been elected, but he was not “ qualified according to a late statute to be chose to that office.” After the election, he put the seal of the corporation to an obligation. It .was decided that as he came into office by color of an election, he was thereby Mayor defacto, and all judicial and ministerial acts done by him were good. Although he might have been removed, yet this not being done, he bad a right to seal the bond. The case of the King v. Verelet, was an indictment for peijury in taking an oath before a Surrogate of the Bishop of London. Lord Eldon held that this acting was prima facie evidence, on the general presumption that one acting in office had authority to do so, but that it might be rebutted. This was on the same principle as that on which the case of the State v. Hayward was decided, that the legal competence of the officer who administered the oath was a material allegation in the indictment, and as was said in the case of Wilcox v. Smith, by Sutherland, J., it may be that the strict legal title of the officer, under such circumstances, may be inquired into. In New York, several cases involving the legality of the acts of officers defacto have been decided. In the case of the People v. Collins, a Clerk had refused to record a survey, because the Commissioners of highways had not taken the oaths required by law. The Court say, if the Commissioners had acted without taking the oaths, they were liable to a penalty, and on their default the town might have proceeded to a new choice. The rule for a peremptory mandamus was made absolute.
McInstry v. Tanner, was a case where one had been appointed a justice, who was a priest, and as such, not constitutionally eligible to the office. His acts were held valid as an officer de facto. The Court say, the acts of officers de facto are often valid, so far as they concern the public, or third persons. In the case of Wilcox v. Smith, after quoting the cases of the People v. Collins, and McInstry v. Tanner, Sutherland, J. says, it will be observed that these cases do *97 not go on the ground that the claim by an individual to be a public officer, and his acting as such, is merely prima facie evidence that he is an officer de jure; but the principle they establish is this, — that an individual coming into office by color of an election or appointment, is an officer de facto, and his acts in relation to the public, or third persons, are valid until he is removed, although it be conceded that his election or appointment was illegal. His title shall not be inquired into. The same principles were again affirmed in the Supreme Court of New York in the case of the People v. White. Bronson, J. in delivering the opinion of the Court says, “If the aldermen were not Judges de jure, they were at least Judges defacto, with color of legal title; and no principle is better settled than that the acts of such persons are valid, when they concern the public or the rights of third persons who have an interest in the act done. It would be impossible to maintain the supremacy of the law, if individuals were at liberty in a collateral way to question the authority of those who in fact hold public offices under color of legal title. In this case the judgment of the Supreme Court refusing a new trial was reversed in the Court for the correction of errors, but not on any ground impeaching the correctness of these principles. These cases, and the broad principle of public expediency upon which they rest, are decisive of the case under consideration. None of them are exactly like it. The case of the People v. Collins approaches nearest to it; but the principle which governed them applies with equal force to the case of Kottman and wife v. Ayer. In this case Collins’ first term had expired. He was re-appointed. He did not qualify under this second appointment, but continued to act. Here the usual evidences of official right were united, viz. appointment to, and the actual discharge of the duties of, the office. He was recognised by the community as an officer. Even the Clerk of the Court, who was perhaps the only person whose position enabled him to know with certainty whether Collins had taken the oaths of office, recog-nised him as a justice, in recording the very renunciation the validity of which is the question involved in this case. Under these circumstances, it would be attended with the most mischievous and pernicious consequences to hold his official acts, and the official acts of all who have acted under the like circumstances, to be void. The motion to reverse the decision of the Circuit Court is dismissed.
24 Wend. 525.
O’Neall, J. and Frost, J. concurred.

Motion refused.