CASE No. 1023.

STATE v. HOPKINS.

1. The statement of a juror on his *voir dire* in the hearing of the jury that "he had said he thought the prisoner was guilty and ought to be hung," and the volunteered opinion of a witness for the state from the stand that he would not believe the prisoner on his oath, are no grounds for a new trial of one convicted of murder.
2. The prisoner was arraigned in open court, in the presence of the clerk, by one who had been appointed deputy clerk and was acting as such, although he had not formally complied with all the requisites of a legal appointment. *Held,* that the arraignment was valid.
3. While the law presumes malice from the mere fact of intentional killing, yet when all the facts are brought out, there is no room for presumption, and the state, who affirms the malice, must prove it. *State* v. *Coleman,* 6 *S. C.* 185, approved.

Before MACKEY, J., Chester, March, 1880.

Indictment against Scott Hopkins for murder. The case is fully stated in the opinion.

*Messrs. S. P. Hamilton* and *J. J. Hemphill,* for appellant.

*Mr. Solicitor Gaston,* contra.

April 18th, 1881. The opinion of the court was delivered by

McGOWAN, A. J. The defendant, Hopkins, was indicted for the murder of James R. Stroud. C. C. Macoy was clerk of the court for the county of Chester, but the prisoner was arraigned and called upon to plead, and the jury were sworn and charged by G. W. Curtis, who was acting as deputy of the clerk, but, as it is alleged, without proper authority to perform these duties. Macoy had been clerk for more than one term. In May, 1876, he had appointed Curtis his deputy, but he had ceased to act as such. On March 8th, 1880, shortly before the trial of Hopkins, Macoy again appointed him deputy, and at the trial he acted as

deputy clerk, although the written appointment made had not been communicated to him, approved by the judge, or recorded. Macoy, the clerk, was present, superintending the arraignment, which was conducted by Curtis, acting as deputy.

During the arraignment a juror, Lewis Burdett, was presented to the prisoner, and the solicitor had him to stand aside without peremptory challenge—the challenges allowed the state being exhausted. To this the prisoner objected, and the objection being overruled, he excepted. The juror was afterwards recalled and sworn by the prisoner.

J. F. Green, a juror, on his examination on his *voir dire*, said, in the presence of the panel, that he had said "Scott Hopkins was guilty, and ought to be hung." The juror was excluded.

The facts, short and simple, were about as follows: Defendant went to Chester, to sell cotton. He sold to Gunhouse & Co. After the money had been placed upon the table for defendant, and he was in the act of putting it in his pocket, deceased, Stroud, came up and said: "You owe me $5.50, but I will take $5, and call it square;" and, retaining $5, moved towards the door. Defendant denied the debt, and protesting against deceased taking his money, caught him by the lower part of his vest. They then took hold of each other by the lapel of the coat. Deceased said twice, "let me loose;" and the second time he said this he struck defendant in the face, and about the same time the pistol was fired. The defendant claimed that the pistol was discharged from his pocket accidentally. The homicide occurred on the first Monday in March, 1880, and in a few days the prisoner was tried. The jury found a verdict of guilty. The prisoner's counsel moved for a new trial, and that being refused, he appeals to this court, upon the following exceptions:

"1. Because J. F. Green, one of the jurors of the panel, presented to the prisoner and examined upon his *voir dire*, if he had 'expressed or formed any opinion as to the guilt or innocence of the prisoner at the bar,' said, in presence of the whole panel of the jury, that 'he had said Scott Hopkins was guilty, and ought to be hung.'

"2. Because William McAlily, a witness examined in reply by the state, volunteered to say from the stand 'that he would

not believe Scott Hopkins on his oath,' when the character of said Scott Hopkins for truth and veracity was never put in issue. And, as matter of law outside the motion for a new trial, the said Scott Hopkins makes the following exceptions:

" 1. Because the said Scott Hopkins was arraigned for trial by George W. Curtis, an unauthorized person, and not the clerk or deputy clerk of the court, but being, at the time of such araignment, the Probate judge of Chester county.

" 2. Because his Honor charged the jury as follows: That if they found that Scott Hopkins caused the death of the deceased by the use of a deadly weapon, that they might infer malice from that fact, when the situation of the parties, the shortness of time and the circumstances occurring at the time of the killing rebutted every presumption of malice, and the charge of his Honor tended to mislead the jury on that point.

" 3. Because, in the presentment of the juror, Lewis Burdett, the solicitor ordered the juror to stand aside without peremptory challenge or challenge for cause, which was objected to by accused and objection overruled by the court."

The first two exceptions are not well taken. On being examined on his *voir dire* the juror, Green, stated, in emphatic terms, that he had formed and expressed an opinion, and, of course, he was excluded. The witness, McAlily, simply volunteered the statement that he would not believe Scott Hopkins on his oath.

The first exception as " to matter of law," charges that the prisoner was arraigned for trial by George W. Curtis, an unauthorized person, and not the clerk of the court. The law does not indicate any particular person to conduct an arraignment, the purpose of which is simply " to take care that the prisoner do appear to be tried, and hold up his hand at the bar for the certainty of the person, and plead a sufficient plea to the indictment." In practice it is usually, but not always, done by the clerk. The whole proceeding is under the immediate direction of the court. The plea is the important matter, and that is the act of the party himself.

The clerks' act (*Gen. Stat.* 174) provides that the " clerk may appoint a deputy, to be approved by the Court of Common Pleas,

a record of whose appointment shall be made in the clerk's office." George W. Curtis had been an old deputy of the clerk and was familiar with his duties. He was re-appointed deputy for the March Term of the court for Chester, 1880, and in that capacity conducted the arraignment of the prisoner, Hopkins. The written appointment had not been given to Curtis, or approved by the judge, or recorded, but he acted as deputy in good faith, and the fact that all the requirements had not been complied with did not make void the acts done by him as deputy.

"One in office and transacting its duties is supposed to be rightfully there, and, so far as third persons are concerned, that presumption legalizes his acts." *State* v. *Hall,* 2 *Spears* 160; *McBee* v. *Hoke, Id.* 138; *Kottman* v. *Ayer,* 3 *Strob.* 92.

"The authority of a judge *de facto* cannot be called in question collaterally. His title to the office can be considered only in some proceedings instituted for that purpose." *State* v. *Anone,* 2 *N. & McC.* 27.

Besides, the arraignment was, in fact, the act of Macoy, the clerk. Both Curtis and Macoy state that the latter was present. Macoy swears that "during the whole of the arraignment of the said Scott Hopkins for murder, the said Charles C. Macoy, as clerk aforesaid, was present conducting the said arraignment, and the said George W. Curtis, as deputy as aforesaid, only assisted the said clerk in the arraignment."

*The second exception* makes the objection that the judge committed error in charging as to the presumption of malice. He charged the jury, among other things, as follows: "In every case of intentional homicide the presumption of malice arises, and the fact of killing intentionally by the use of a deadly weapon being shown in any case, the burden of proof is thereby imposed upon the defendant to rebut such presumption, unless the facts and circumstances shown in the testimony in behalf of the state incidentally rebut it." There is no doubt whatever of the isolated proposition that the law presumes malice from the mere fact of homicide, but there are cases as made by the proof to which the rule is inapplicable. When all the circumstances of the case are fully proved there is no room for presumption. The question becomes one of fact for the jury, under the general prin-

ciple that he who affirms must prove, and that every man is presumed innocent until the contrary appears. We cannot distinguish this case from that of *State* v. *Coleman,* 6 *S. C.* 185. In that case the facts were not contained in so small a compass nor as fully proved as they were in this. In that case the judge's charge was substantially, indeed almost identically, the same as in this, viz.: "That all homicide is presumed to be malicious and amounting to murder until the contrary appears from circumstances of alleviation, excuse or justification, and that it is incumbent on the prisoner to make out such circumstances to the satisfaction of the court and jury, unless they arise out of the evidence produced against him." In that case the court set aside the verdict, and in the judgment express the view which we adopt as applicable to this case. The court says:

"This presumption is not applicable when the facts and circumstances attending the homicide are disclosed in evidence so as to draw a conclusion of malice or want of malice, as one fact, from the evidence. Presumptions of this class are intended as substitutes in the absence of direct proof, and are in their nature indirect and constructive. The best evidence of the state of mind attending any act is what was said and done by the person whose motive is sought for. The motive that impels to the taking of human life is no exception to this rule, and the importance of the consequences that depend on the accurate ascertainment of its nature in such cases, affords the strongest ground for limiting indirect and constructive proofs to the narrow grounds within which they belong. * * * It appears, from the record before us, that the proofs embraced a statement of the origin of the difficulty between the parties; their conduct towards each other down to the time of the killing, and, to some extent, the subsequent conduct of the prisoner. When the evidence is of such a character, it must be presumed to be sufficient to enable the jury to draw from it a conclusion of fact one way or the other. Under such circumstances there was no necessity, and, therefore, no propriety in resorting to any general presumption arising by operation of law. * * * When the circumstances preceding and attending an act of this character are full, as in the present case, the prisoner is entitled to the

benefit of any doubt that may arise, and cannot be deprived of such benefit by any presumption of guilt arising by operation of law from the naked fact of homicide. A charge may be erroneous, although the propositions of which it is composed may *severally* be conformable to recognized authority, if in its scope and bearing in the case it was likely to lead to a misconception of the law."

The judgment below is set aside, and the case remanded for a new trial.

SIMPSON, C. J., and McIVER, A. J., concurred.