776 S.E.2d 87

**The STATE, Respondent,**

v.

**Daniel Demond GRIFFIN, Appellant.**

**Appellate Case No. 2012–213602.**
**No. 5322.**

Court of Appeals of South Carolina.

Heard Feb. 11, 2015.
Decided June 24, 2015.
Rehearing Denied Aug. 19, 2015.

Appellate Defender, LaNelle Cantey DuRant, of Columbia, for appellant.

Attorney General, Alan McCrory Wilson and Assistant Attorney General, John Benjamin Aplin, both of Columbia; and

Solicitor, David Matthew Stumbo, of Greenwood, for respondent.

GEATHERS, J.

Daniel Demond Griffin (Appellant) appeals his convictions for first-degree assault and battery, armed robbery, and possession of a weapon during the commission of a violent crime. He contends the circuit court erred in denying his motion to dismiss, in which he asserted he was unlawfully stopped, seized, detained, and arrested by deputies who had not been duly qualified to serve as deputy sheriffs. We affirm.

## FACTS/PROCEDURAL HISTORY

On November 30, 2010, several deputies from the Greenwood County Sheriff's Office (GCSO) captured and arrested Appellant.[1] A grand jury indicted Appellant for first-degree assault and battery, armed robbery, and possession of a weapon during the commission of a violent crime. A bench trial was held in May 2012.

During the trial, Appellant moved to dismiss the matter with prejudice, asserting "multiple [GCSO] employees chased, stopped, seized, detained, handcuffed, and/or arrested [him] prior to being duly qualified to serve as deputy sheriffs." In the motion, Appellant contended the matter should be dismissed with prejudice because the GCSO did not comply with sections 23–13–10 and 23–13–20 of the South Carolina Code (2007). Section 23–13–10 states that once the sheriff has appointed someone to be a deputy, a certificate detailing the appointment must be signed by the sheriff and the appointment must be approved by a circuit court judge. Section 23–13–20 requires each deputy to "enter into bond in the sum of

---

1. Appellant and two other men robbed Quentin Carter (Victim) and then struck Victim in the head numerous times with a gun. After Appellant and his codefendants left the scene, Victim's sister called the police, and a "be on the lookout" (BOLO) alert was issued. Appellant and his codefendants subsequently encountered a GCSO deputy who had heard the BOLO alert. A high-speed police chase ensued. The chase ended when the car in which Appellant was riding crashed into another deputy's patrol car. Appellant and his codefendants left their vehicle and fled on foot, but they were all subsequently apprehended by GCSO deputies.

one thousand dollars" and take an oath of office. Section 23–13–20 further states, "The form of such bond shall be approved by the county attorney and, with the oaths, shall be filed with and kept by the clerk of court for the county."

In support of the motion to dismiss, Appellant called Ingram Moon to testify. Moon stated she had served as the Greenwood County Clerk of Court since 2004 and had been employed in the clerk's office since 1985. Moon testified the clerk's office had no record of any bonds being filed by anyone from the GCSO. She also stated the first time any oath certificates were filed in the court was on September 30, 2011. Moon produced copies of those certificates. Each certificate contained the oath taken by the deputies of the GCSO and was signed by a deputy and by the sheriff.

Moon also testified that on September 30, 2011, she recorded an order from a circuit court judge. In the order, the judge requested the oath certificates be recorded in the clerk's office (2011 Approval Order). Moon testified that prior to the 2011 Approval Order, no orders from circuit court judges approving the appointments of the sheriff's deputies had been filed in her office.

In the 2011 Approval Order, the circuit court judge listed the names of the deputies whose appointments he was approving. The judge initially noted he believed section 23–13–10 was unconstitutional because of a separation of powers issue.[2] However, the judge proceeded to approve all of the deputies on the list, stating "[A]ny deputy who is, has been, or ever shall be duly hired by the sheriff and who otherwise meets all other qualifications and legal requirements for the office of

---

2. The circuit court judge's separation of powers concern stemmed from the portion of section 23–13–10 that requires deputy appointments be approved by a circuit court judge. He stated, "[T]he office of sheriff belongs to the executive branch of government, and the office of circuit judge belongs to the judicial branch of government." He believed the court had "no authority over hiring, discharge or other personnel decisions of the sheriff's office"; therefore, he attempted to interpret the statute in a way that would prevent a separation of powers issue. The judge noted "the traditional, ceremonial role of the judiciary in administering oaths to elected or appointed officials" and determined section 23–13–10 "merely requires [a] judge to note passive acceptance ... to an executive decision within the exclusive discretion of the sheriff."

deputy sheriff shall automatically be covered by this order." He also wrote, "To the extent permitted by law, [the 2011 Approval Order] shall be applied *nunc pro tunc* back to the date the [deputies on the list] were first sworn as deputies."

After Moon testified, the circuit court agreed to take the motion to dismiss under advisement. The State continued with its presentation of evidence. Several deputies took the stand and testified about the circumstances surrounding Appellant's capture and arrest. Upon taking the stand, the deputies testified regarding the amount of time they had been employed with the GCSO. All of the deputies stated they were bonded and had taken an oath for every sheriff for whom they had worked.

After the State rested, Appellant moved for a directed verdict on the lawfulness of the arrest issue. Appellant again asked the circuit court to take the matter under advisement. Subsequently, Appellant took the stand and testified in his own defense.

On October 12, 2012, the circuit court issued a written order in which it noted Appellant had moved to dismiss the charges, asserting he had been unlawfully stopped, seized, detained, and arrested. The court declined, however, to decide the issue of the appointment of the deputies, finding "[e]ven if the deputies were not properly appointed under the statutes, the remedy would not be to dismiss these charges, or suppress any evidence entered at trial." The circuit court proceeded to find Appellant guilty on all charges.

The court subsequently sentenced Appellant to ten years' imprisonment for the assault and battery conviction, ten years' imprisonment for armed robbery, and five years' imprisonment for possession of a weapon during the commission of a violent crime, all to be served concurrently. This appeal followed.

## ISSUE ON APPEAL

Did the circuit court err in denying Appellant's motion to dismiss, in which he asserted he was unlawfully stopped,

seized, detained, and arrested by deputies who had not been duly qualified to serve as deputy sheriffs?

## STANDARD OF REVIEW

■ In criminal cases, an appellate court may review only errors of law. *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). "The appellate court will reverse only when there is clear error." *State v. Rogers,* 368 S.C. 529, 533, 629 S.E.2d 679, 681 (Ct.App.2006).

## LAW/ANALYSIS

Appellant contends the circuit court erred in denying his motion to dismiss. To support this assertion, he argues the process used to appoint the deputies was not in compliance with the statutory requirements of sections 23–13–10 and 23–13–20 of the South Carolina Code.

Under section 23–13–10, "[t]he sheriff may appoint one or more deputies to be approved by the judge of the circuit court or any circuit judge presiding therein. Such appointment shall be evidenced by a certificate thereof, signed by the sheriff, and shall continue during his pleasure." Further, section 23–13–20 imposes additional requirements: "Each deputy sheriff shall, before entering upon the discharge of his duty, enter into bond in the sum of one thousand dollars, with sufficient surety, to be approved by the sheriff of the county. . . ." Section 23–13–20 also requires that each deputy take an oath of office and file proof of the bond and oath with the county's clerk of court.

The GCSO's deputy appointment process did not comply with all of the requirements of sections 23–13–10 and 23–13–20. Although section 23–13–20 requires that proof of the deputies' bonds and oaths be filed with the clerk of court, Moon testified the clerk's office had no record of any bonds being filed by anyone from the GCSO. She also stated the first time any oath certificates were filed with the clerk's office was on September 30, 2011. Additionally, section 23–13–10 requires that deputy appointments be approved by a circuit court judge; however, Moon testified no orders from circuit court judges approving the appointments of the sheriff's depu-

ties had been filed in her office prior to the 2011 Approval Order.

■ Nonetheless, the GCSO deputies can be considered de facto deputies despite their failure to comply with all of the requirements of sections 23–13–10 and 23–13–20. "One who is actually acting as deputy sheriff under a color of appointment is such officer de facto, even though the person's appointment was not made with all the formalities required by statute, . . . as where the appointment is not . . . filed[ ] or confirmed by the judge. . . ." 80 C.J.S. *Sheriffs and Constables* § 38 (2015) (footnotes omitted). "Likewise, one acting as deputy is a de facto officer notwithstanding the person has failed to file the requisite oath[ ] or has failed to give[ ] or sign the necessary bond." *Id.* (footnotes omitted). "It is the appointment that confers the office. . . ." *Kottman v. Ayer,* 34 S.C.L. (3 Strob.) 92, 94 (1848). "[S]o long as the officer appointed continues to discharge the duties of his office, his official acts, as to third persons, are legal," despite his failure to give a bond or take an oath. *Id.*

In *State v. McGraw,* our supreme court considered whether a deputy was properly appointed. 35 S.C. 283, 287, 289, 14 S.E. 630, 631 (1892). It found that although the deputy had been appointed and had acted as a deputy, the deputy had never taken the oath of office and his appointment had never been formally approved by a circuit court judge. *Id.* at 287, 14 S.E. at 631. Notwithstanding these deficiencies, the court determined the deputy was "at least a *de facto* officer." *Id.* at 289, 14 S.E. at 631; *see Farmer v. Sellers,* 89 S.C. 492, 496, 72 S.E. 224, 226 (1911) (stating if constables were required to give bond, "one holding the appointment of the Governor without giving the bond must be respected as a de facto officer"); *Elledge v. Wharton,* 89 S.C. 113, 114, 71 S.E. 657, 657 (1911) (holding although the rural police officers' appointment was made without the recommendation of the legislative delegation of Greenwood County, they were de facto officers because they were commissioned by the Governor, took the oath of office, were bonded, and discharged their duties in good faith); *see also State v. Hopkins,* 15 S.C. 153, 156 (1881) ("The written appointment had not been given to [the deputy clerk], or approved by the judge, or recorded, but he acted as

deputy in good faith, and the fact that all the requirements had not been complied with did not make void the acts done by him as deputy.").[3]

 In the instant case, all of the deputies who participated in Appellant's capture and arrest had been employed with the GCSO for a significant amount of time, ranging from eight to twenty-eight years. Additionally, all of the deputies stated they were bonded and had taken an oath for every sheriff for whom they had worked.

Furthermore, at the time of Appellant's capture and arrest, the GCSO deputies were performing duties consistent with their appointments as deputies and were identifiable to Appel-

---

3. We also find instructive cases from several other jurisdictions that have conferred de facto status on deputies whose appointments were not in accordance with state statutes. For example, in *Amerson v. State*, 648 So.2d 58, 59–60 (Miss.1994), Amerson contended he could not be convicted of simple assault upon a law enforcement officer because the deputy he assaulted did not attend the training academy, as required by statute, and, therefore, was not a law enforcement officer. The Supreme Court of Mississippi determined that as to Amerson, the deputy's actions were valid. *Id.* at 62. It stated, "Even if any deficiencies existed in [the deputy's] appointment as deputy sheriff, [he] would still have been a de facto deputy sheriff" at the time of the assault because he was acting pursuant to the appointment, control, consent, and approval of the sheriff. *Id.* Furthermore, the deputy was dressed in uniform, wearing a badge signed by the sheriff, and was identifiable to the inmates as a deputy sheriff who had authority. *Id.* The court went on to find Amerson could still be found guilty of assaulting an officer and would "not be allowed to benefit from administrative failures because these failures were not readily apparent and were unknown to Amerson at the time of the assault." *Id.; see also Malone v. State*, 406 So.2d 1060, 1062–63 (Ala.Crim.App.1981) (finding the trial court properly denied the appellant's motion to quash the arrest warrant and dismiss the complaint; despite not filing written copies of their oaths before arresting the appellant, both deputies were acting under color of right as de facto deputies because they were orally sworn in the presence of the sheriff, performed duties consistent with the appointment, maintained an office in the county jail, and were entrusted with the only keys to the county jail); *State v. Stago*, 82 Ariz. 285, 312 P.2d 160, 161–62 (1957) (finding although the deputy's appointment was not recorded in the office of the county recorder and his appointment was never approved by the Board of Supervisors, he was not deprived of de facto deputy status); *Call v. Commonwealth*, 482 S.W.2d 770, 772 (Ky.Ct.App.1972) (holding the sheriff's wife was a de facto officer even though the county judge had not approved her appointment), *modified on other grounds*, 492 S.W.2d 195 (Ky.Ct.App.1973).

266

lant as deputy sheriffs who had authority. Deputy Marc Cromer testified he encountered Appellant and Appellant's two codefendants at a gas station after the BOLO alert had been issued. Although Deputy Cromer was in an unmarked police vehicle, he testified he drove next to Appellant's vehicle, activated his blue light, was in uniform, and identified himself as a deputy with the GCSO. Deputy Cromer stated that after this exchange, Appellant and his codefendants "took off," resulting in a high speed chase.

Moreover, when Appellant took the stand, he testified he remembered seeing "a patrol car" when he and his codefendants arrived at the gas station. Appellant also stated he and his codefendants ran from the scene after they "hit the police car." Nothing in the record indicates that, on the date of Appellant's capture and arrest, he believed the deputies were not duly qualified. Thus, we find the GCSO deputies could be considered de facto deputies despite not complying with the requirements of sections 23–13–10 and 23–13–20. *See Kottman*, 34 S.C.L. at 94 (stating if an "appointed [officer] continues to discharge the duties of his office, his official acts, as to third persons, are legal," even if he did not comply with all of the formalities of appointment); *see also Amerson*, 648 So.2d at 62 (finding the defendant could still be found guilty even though the deputy's appointment did not comply with statutory requirements because the defendant should "not be allowed to benefit from administrative failures [if the] failures were not readily apparent and were unknown to [the defendant] at the time of the" crime).

## CONCLUSION

Based on the foregoing reasons, the circuit court's denial of Appellant's motion to dismiss is

**AFFIRMED.**

THOMAS and KONDUROS, JJ., concur.