646 So.2d 238 (1994)
STATE of Florida, Appellant,
v.
David J. SMYLY, Appellee.
No. 93-3414.
District Court of Appeal of Florida, Fourth District.
November 16, 1994.
*239 Robert A. Butterworth, Atty. Gen., Tallahassee, and James J. Carney, Asst. Atty. Gen., West Palm Beach, for appellant.
Jack A. Fleischman, West Palm Beach, for appellee.
FARMER, Judge.
The trial judge granted a motion for judgment of acquittal after the jury had returned a verdict of guilty. Because we find that the evidence was legally sufficient to defeat the motion, we reverse that order. Equally obvious to us is that the trial judge actually concluded that the weight and credibility of the evidence would not support a verdict of guilty. We therefore treat the order as granting a motion for a new trial and, as treated, we affirm and remand for a new trial.
*240 Defendant was charged with robbery by purse snatching. The facts of the case are best gathered from the trial judge's order granting the judgment of acquittal, which also sets forth in detail his analysis of the evidence, and so we turn to it:
"The victim * * * testified that while she was attempting to open the trunk of her car in a parking lot someone came up behind her and grabbed the purse which she was holding with her upper arm, ran away and jumped in a car. She was unable to describe the person who stole her purse nor was she able to describe the vehicle. She did remember that the person who stole her purse had red hair. [Defendant was asked] to turn around and display his hair for the victim. The victim was then asked to state whether or not that looked like the hair of the person who stole her purse. The victim answered, No that's not it.
"The second witness called by the State was an eye witness to the robbery who testified that although she was not 100% sure she was very sure or pretty sure that the Defendant seated in the courtroom was the person who robbed the victim of her purse. She also testified that she had picked his picture out of six which were displayed to her by the police in a photo lineup. She also testified that the description that she gave the police on the day of the robbery was to the effect that the perpetrator was about 5'9" and weighed between 170-190 pounds and had blond hair. The Defendant was about 6'2", 140 pounds and had brown hair. She also testified that when she first heard from the police she was told that the Defendant was in custody and that she was requested to in effect pick him out of six pictures she was shown. After she picked out the Defendant to further reinforce her opinion that she had correctly identified the perpetrator she testified that the police informed her that they had found the property of the victim on this Defendant when he was arrested. This was a false statement.
"The third witness called by the State testified that he was the lead Detective in the case and that he had shown the photo lineup to the witness. He denied having told the eyewitness that she had chosen correctly or that he had found any property of the victim on the Defendant. In fact, he admitted that he had found no property of the victim on the Defendant and that the only property ever turned up belonging to the victim was a check cashed by a Mr. Phillips in Broward County. He further testified that he had done nothing to investigate that case because he said he had an eye witness identification that the perpetrator was Mr. Smyly. No connection between Mr. Phillips and the Defendant Smyly was ever established.
"At the close of the State's case the Court was confronted with:
1. a victim who said that the Defendant was probably not the person who had taken her purse. Either that or he had changed his hair color and there was no evidence that a change had taken place.
2. An eye witness identification that wasn't 100% sure and whose identification was called into question because of improper police procedure both before and after the photo lineup;
3. evidence that someone unconnected to the Defendant was arrested for cashing checks taken from the victim.
Under such circumstances it seemed that the Defendant was probably not guilty of this charge.
"The Defendant presented his girl friend's father who testified that during the time of the occurrence (which had been established as around noon on March 18, 1993) the Defendant was sleeping on his couch in his home in Plantation, Florida. This witness' testimony was not challenged or impeached in anyway as to this fact. The crime occurred in Delray Beach approximately 45 minutes drive from the location where the Defendant was staying. The Defendant testified that he left his girl friend's house at about 3:00 with his girl friend and bought a used car then took it to a garage for some repairs and then visited his Mother. His mother testified that she saw her son between four and six p.m. and that he showed her the new used car he had just bought and told her that he *241 had been buying a car that day and had taken it to a garage to have it checked. This testimony was also uncontradicted. The State proved that the person that stole the purse jumped in a small white car and sped away. It was also proven that a person who owns a small white car lives across the street from the Defendant's Mother and that the Defendant had lived with his Mother up until about two years ago when he had moved out. It was established that the Defendant and the person who lived across the street from his mother with the small white car had known each other for a long time.
"Based on the above evidence the Court concluded that there was not legally sufficient evidence present upon which the jury could find other than not guilty. The Court does not view the evidence as simply conflicting or admitting of different reasonable inferences. After viewing all the evidence the Court was clearly satisfied that it would not support a conviction." [e.s.]
It is this order that we treat as effectually determining that the verdict was against the weight of the evidence.
Defendant had moved for a judgment of acquittal [JOA] at the close of the state's case and then again at the close of all the evidence. The trial judge expressly reserved ruling on the latter motion. After the verdict was rendered, the court thanked the jury for their effort and  without hearing argument from either party  announced straightaway that he was now granting the reserved motion for JOA. While we agree with the state that the evidence was legally sufficient to defeat a motion for a judgment of acquittal, the trial judge's analysis reveals a different problem in his mind. As his last sentence quoted above demonstrably shows, it was the weight and credibility of the evidence that he found lacking.
In Tibbs v. State, 397 So.2d 1120 (Fla. 1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), the court distinguished between the sufficiency of the evidence, on the one hand, and the weight and credibility of the evidence, on the other. Trial and appellate courts are equally capable of making the legal judgment whether the evidence is legally sufficient to allow the state's case to go to the jury and support a verdict.[1]Id. Legal sufficiency means that the state has adduced a bundle of evidence that, if believed by the jury, would constitute proof beyond a reasonable doubt on every element of the offense charged. Id. The failure to produce legally sufficient evidence exonerates the defendant and requires his dismissal. Id.
The weight and credibility of the evidence are different. Id. Initially the inquiry is directed to the jury to weigh the legally sufficient evidence and assess its credibility. Id. When the jury returns a verdict of guilty on legally sufficient evidence, however, the judge's role is not yet over. The trial judge may be asked under rule 3.600(a)(2) to assess the verdict in light of the weight and credibility of the evidence.[2]Id. In this regard, the trial judge sits as the seventh juror with a veto over the unanimous vote of the other six.[3]Tibbs, 397 So.2d at 1123. If the trial judge determines that the verdict of guilty is against the weight of the evidence, that is not a determination that the evidence was legally insufficient so as to require an acquittal. Rather it represents the trial judge's disagreement with the jury's weighing of the evidence and allows the judge to order a new trial. Tibbs, 397 So.2d at 1123; see also Kelley v. State, 637 So.2d 972 (Fla. 1st DCA 1994).
We note that the defendant here never actually moved for a new trial. This *242 obviously resulted from the trial judge's immediate response to the verdict to grant the motion for JOA. Ordinarily, we would reverse the judgment of acquittal and remand with leave for defendant to make such post trial motions as he may be advised within 10 days of the receipt of our mandate. In this instance, however, we regard as fulfilled that which almost surely would have been completed routinely and as a matter of course but for the unusual action of the trial judge. We have the trial judge's analysis which is indubitably to find the verdict against the weight of the evidence. As the trial judge went so far as to order a judgment of acquittal, he surely would have ordered a new trial if he had correctly perceived the limits of his legal authority. We treat as done what so patently to us was intended to have been done.[4]
REVERSED AND REMANDED FOR NEW TRIAL.
GUNTHER, J., and OWEN, WILLIAM C. Jr., Senior Judge, concur.
NOTES
[1] Before Tibbs, an appellate court could also assess the weight and credibility of the evidence, in the same way that the trial judge can. Tibbs changed that, however, and took away from appellate judges any role in assessing weight and credibility.
[2] See Fla.R.Crim.P. 3.600(a)(2).
[3] This is unlike the situation in civil cases where, in considering a motion for new trial, the judge does not sit as an additional juror with veto power over the venire. Wackenhut v. Canty, 359 So.2d 430 (Fla. 1978) (trial judge improperly acted as seventh juror in ordering remittitur or new trial; province of jury ought not to be invaded by a judge merely because he raises a judicial eyebrow at its verdict); but see § 768.74, Fla. Stat. (1993) (trial court has responsibility to review amount of damages to determine if amount is excessive or inadequate and, if found excessive or inadequate, to order remittitur or additur).
[4] In remanding for a new trial, we make no determination that a grant of a new trial under these circumstances  the trial judge finds that the evidence lacks the credibility and weight required  does or does not violate the Double Jeopardy Clause. See, e.g., Burks v. United States, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); and Kelley v. State, 637 So.2d 972, 977-78 (Fla. 1st DCA 1994) (Barfield, J., concurring). Defendant is free to raise such legal defenses as he may be advised, and those legal defenses must first be considered by the trial court. We now merely note that our decision today is limited to what has been expressed in this opinion and is without prejudice to any defenses the defendant may assert.