**In re SEALED CASE.**

No. 94–3009.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 1, 1996.

Decided Nov. 12, 1996.

Rehearing Denied Jan. 15, 1997.

Before GINSBURG, SENTELLE, and RANDOLPH, Circuit Judges.

SENTELLE, Circuit Judge:

Appellant John Doe[1] and two others were charged with possession with intent to distribute 50 grams or more of cocaine base, possession with intent to distribute marijuana, and two counts of use of a handgun during and in relation to a drug trafficking crime. All defendants were convicted on each of the four counts. One of the gun counts was vacated by the trial court.

Doe was sentenced to five years in prison and five years of supervised release. He has served his prison time and has approximately three years remaining on his supervised release. He appeals from his conviction on the three remaining counts. The government concedes that the remaining gun conviction is inconsistent with *Bailey v. United States*, —— U.S.——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), and should be vacated. We agree. Appellant raises a number of challenges to his drug convictions. Rejecting each of these, we affirm.

## BACKGROUND

On the evening of October 11, 1990, members of the Metropolitan Police Department raided a house in the Southeast section of Washington. Appellant Doe and the two other defendants were inside. Ownership and occupancy of the house was an issue at trial. Doe's name was on the lease for the house, along with the name of his girlfriend. Evidence introduced at trial established that Doe slept at the house several times a week.

When the police first came upon Doe they saw him putting an object into one of his pockets. That object turned out to be thirteen one-inch square crack-filled ziplock bags held together by a safety pin. Searching the house, the police came upon a total of 311[2] additional bags of crack, as well as some marijuana and two handguns. Eleven of the additional bags of crack were underneath a pillow on a bed in the room where the police found Doe. Ninety-nine bags were in a man's coat hanging in that same room. Two hundred and two bags, along with a large rock of crack, a number of empty ziplocks, and three safety pins, were found in a drawer in a small back bedroom. One of the guns

---

1.  This case has been sealed in order to protect the identity of the appellant. We will refer to him as John Doe.

2.  There is some confusion over the number of bags of crack that were found in the house. The parties use the figure 311 in their briefs, but the sum (99 + 11 + 202) of the bags found is 312.

When added to the 13 bags found on Doe, the total number of bags is 325. The parties, however, use the figure 324. This is also the number of bags that the chemist claimed to have analyzed. We will respect the assertion of the parties and assume that the total number of bags was 324.

was in the room where Doe had first been seen; the other was in a closet near the front door. The marijuana was on top of a dresser near the washing machine in the basement.

The police investigator at the scene placed all of the narcotics evidence in a raid kit. At trial the government presented all of the crack taken from the house, including the thirteen bags taken from Doe, in a single exhibit.

The jury found Doe guilty on both drug counts. He now raises several challenges to those convictions. We reject each of his challenges and affirm.

## ANALYSIS

### A. Failure to Preserve Evidence

Doe contends that the government deprived him of his most effective defense by failing to keep the thirteen bags of crack taken from his person separate from the 311 bags that were taken from the rest of the house. Doe contends that he would have been able to prove through chemical analysis or otherwise that the drugs on his person were from a different source than the rest of the drugs found in the house. This would have been highly exculpatory, argues Doe, because it would have made no sense for him to purchase crack from another source if he had had access to the drugs in the house. He asserts that admitting this evidence in this form violated FEDERAL RULE OF EVIDENCE 901 ("Rule 901").

■ Doe did not raise this argument at trial. The standard of review is therefore plain error. *United States v. Thomas*, 896 F.2d 589, 591 (D.C.Cir.1990). To constitute plain error, an error must be "so 'obvious and substantial' or so 'serious and manifest' that it affects the very integrity of the trial process." *United States v. Thorne*, 997 F.2d 1504, 1508 (D.C.Cir.), *cert. denied*, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 467 (1993). An error is not plain unless it is error under the settled law of the Supreme Court or this circuit. *United States v. Glenn*, 64 F.3d 706, 711 (D.C.Cir.1995).

■ It appears to us that the trial court did not err, let alone plainly err, by admitting the evidence in this form. Rule 901 governs the authentication of evidence. It requires as a precondition to admissibility "evidence sufficient to support a finding that the matter in question is what its proponent claims."

In this case, both parties agree that the evidence admitted by the trial court was what the government claimed it to be—the 324 ziplock bags of crack found in the house on the day of the raid. The language of Rule 901 requires no more. Doe has provided no case law for the proposition that Rule 901 is violated when evidence is admitted in a form other than that in which it was originally found.

■ Appellant also makes a broader inadmissibility claim. He asserts that this evidence was not admissible because it had been tampered with by the police. Both parties agree that the investigating officer took the bags seized from Doe off of the safety pin and placed them together with the other bags of drugs seized in the house. Appellant relies on *United States v. Lane*, 591 F.2d 961 (D.C.Cir.1979), for the proposition that once the defendant makes a showing of tampering, evidence is not admissible unless the government establishes that sufficient precautions were taken to maintain the evidence in its original state.

*Lane*, however, is not applicable to this case. *Lane* made reference to tampering with the evidence. *Id.* at 962. This reference was at the end of a quote that included references to "ill will, bad faith, [and] other evil motivation." *Id.* Elsewhere in the opinion the court expressed concern over whether the "identity or character of the evidence underwent change." *Id.* The question in *Lane* was whether the drugs at trial were the drugs that had been purchased by the defendant.

These issues are not presented here. Doe concedes that the drugs entered into evidence were the ones taken from the house. He has put forward no evidence that the police were driven by "ill will, bad faith, or other evil motivation." *Id.* The tampering described in *Lane* does not include the repackaging of evidence done in this case. Appellant can therefore rely neither on the

language of Rule 901 nor on *Lane* in making his initial claim.

Finally, appellant indirectly raises a due process claim. He argues that *United States v. Bryant*, 439 F.2d 642, 651–52 (D.C.Cir. 1971), imposed a duty of preservation on the police, and that the police breached that duty by placing all of the cocaine evidence into a single exhibit. *See also United States v. Gantt*, 617 F.2d 831 (D.C.Cir.1980). On this question, however, *Bryant* and *Gantt* are no longer good law. Due process claims such as the one appellant raises here are now governed by *Arizona v. Youngblood*, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). *See, e.g., United States v. McKie*, 951 F.2d 399, 403 (D.C.Cir.1991) (per curiam).

■ *Youngblood* requires a defendant to prove bad faith on the part of the police in order to establish a due process violation for the failure to preserve evidence. *Youngblood*, 488 U.S. at 58, 109 S.Ct. at 337–38. "The presence or absence of bad faith by the police for purposes of the Due Process Clause must necessarily turn on the police's knowledge of the exculpatory value of the evidence at the time it was lost or destroyed." *Id.* at 57 n. *, 109 S.Ct. at 337 n. *. Appellant has forwarded no evidence that the police knew of the exculpatory nature of this evidence at the time they packaged it together. We therefore reject his due process claim.

Appellant is not correct that complete destruction of the evidence is a prerequisite to any application of *Youngblood*. While *Youngblood* itself was a case in which evidence had been permanently lost, the holding of *Youngblood* refers to the "failure to preserve potentially useful" evidence. *Id.* This is precisely Doe's claim. He argues that the police failed to preserve evidence in a form that was potentially useful to his defense. That claim cannot succeed in the absence of bad faith on the part of the police.

### B. *Violation of Rule 704(b)*

At trial, the prosecutor qualified Detective Joseph Brenner as an expert in the drug trade. He then asked Detective Brenner a series of questions about a hypothetical that was factually identical to this case. The prosecutor initially asked the expert for what purpose he thought the drugs were kept in this house. The expert, pointing to the packaging and the quantity of the drugs, answered that he believed that these drugs were being kept for distribution and not for personal use.

Later in his questioning, the prosecutor asked the witness to assume that a person in the hypothetical had been found with thirteen crack-filled ziplocks that had been attached with a safety pin. The prosecutor then asked the witness whether he had "an opinion as to whether that possession of the [thirteen] ziplocks by that individual would be consistent with personal use or with intent to distribute the [thirteen] ziplocks." Tr. 2/4/91 at 151. The witness answered that it would be consistent with intent to distribute.

FEDERAL RULE OF EVIDENCE 704(b) states "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or of a defense thereto. Such ultimate issues are for the trier of fact alone." Doe objected to this line of questioning at trial and now asserts that admission of this testimony was reversible error.

■ The government contends that there was no error in admitting the expert's testimony on whether the drugs in the house were consistent with personal use or with distribution. We agree. "[E]xpert testimony concerning the *modus operandi* of individuals involved in drug trafficking does not violate Rule 704(b)." *United States v. Boyd*, 55 F.3d 667, 671 (D.C.Cir.1995).

The government concedes that it was error for the judge to have admitted the witness's speculation about Doe's intent, but contends that the error was harmless. We agree with this as well.

The test for harmless error in this circuit is clear. "If (1) the case is not close, (2) the issue not central, or (3) effective steps were taken to mitigate the effects of the error, the error is harmless." *Carey Canada, Inc. v.*

Columbia Casualty Co., 940 F.2d 1548, 1560 (D.C.Cir.1991) (internal quotations omitted). In this case, the error neither tipped the balance in a close case, nor affected a central issue.

■ The erroneously admitted intent testimony was explicitly limited to the appellant's intent as to the thirteen bags found on his person at the time of the arrest. There was overwhelming properly admitted evidence, however, that suggested that this house was being used for drug distribution and that appellant was involved. The expert testified that the amount and packaging of the drugs at the house was consistent with distribution. The appellant's name was on the lease and there was testimony that he slept there regularly. The police found the appellant in a room that contained 123 bags of crack, a handgun, and ammunition. The expert testified that possession of thirteen ziplock bags held together by a safety pin was consistent with distribution rather than personal use. It is highly unlikely that this improperly admitted evidence—the expert's testimony regarding Doe's intent as to the thirteen bags found on his person—led an otherwise uncertain jury to convict. *Cf. United States v. Williams*, 980 F.2d 1463, 1466 n. 1 (D.C.Cir.1992) ("Even without the contested testimony, the government demonstrated Williams' intent to distribute.... Overall, the government offered overwhelming evidence of Williams' guilt....").

Furthermore, the jury's verdict form asked if the appellant was guilty of having the "intent to distribute a mixture and substance containing 50 grams or more of cocaine base." The jury answered that he was. The jury, therefore, must have found that Doe had the intent to distribute the other drugs in the house. *Cf. United States v. Patrick*, 959 F.2d 991, 995–96 & n. 5 (D.C.Cir.1992). This finding, which was not tainted by the inadmissible testimony, was sufficient to support the conviction. The error, which was explicitly limited to the thirteen bags on his person, was therefore not on an issue central to the case.

### C. Sufficiency of the Evidence

Doe's final contention is that the evidence presented by the government was insufficient to support his conviction. We will uphold a conviction against a sufficiency of the evidence challenge if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). It is clear in this case that this standard has been met.

■ There was evidence linking Doe to all of the cocaine found in the house. Doe's name was on the lease of the house and there was evidence that he had stayed there "on and off" for the two years prior to the trial. Tr. 2/6/91 at 49. Doe was found with thirteen bags of crack on his person. In the room where he was found, which was also the room where he slept, the police found ninety-nine bags of crack in a man's coat and eleven bags under a pillow on the bed.

Two hundred and two crack-filled ziplock bags and a 26.4–gram rock of crack were hidden in a drawer in a bedroom down the hall from where the police found Doe. This drawer also contained numerous empty ziplock bags and three safety pins. The ziplocks and the safety pins were similar to the ones discovered on Doe's person. In addition, there was an ashtray containing fresh cigarette butts in that room and evidence that Doe was a smoker. The marijuana was on top of a dresser near the washing machine that Doe testified to having used. In short, there was enough evidence that a rational jury could have found, beyond a reasonable doubt, that Doe actually or constructively possessed with the intent to distribute all of the drugs found in the house. This is all that is required to uphold the conviction against this challenge. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

The appellant relies on cases that are inapposite. He cites *United States v. Zeigler*, 994 F.2d 845 (D.C.Cir.1993), for the proposition that Doe's frequent visits to the house are not sufficient to establish that he knew about the drugs. In *Zeigler*, the cocaine that the jury convicted the defendant of possess-

ing was "locked in a briefcase in a locked room in someone else's apartment ... [y]et the government presented no evidence, circumstantial or direct, that Zeigler ever entered the [room with the drugs] or had the combination to the locks on its door or on the briefcase." *Id.* at 848. In this case, by contrast, the defendant was found with crack in his pocket, and there was evidence that connected him to all of the other drugs in the house.

The appellant cites *United States v. Thorne*, 997 F.2d 1504 (D.C.Cir.), *cert. denied*, 510 U.S. 999, 114 S.Ct. 568, 126 L.Ed.2d 467 (1993), for the proposition that mere proximity to drugs does not establish constructive possession. In *Thorne* the drugs in question were hidden in the closet of a room that defendant shared with at least four other people. *Id.* at 1510. The court dismissed the conviction, holding "the government must also prove the ability to exercise dominion and control over the drugs." *Id.* at 1511. In this case, by contrast, there was powerful evidence that Doe had the "ability to exercise dominion" over the drugs. He was holding drugs when the police arrested him.

While we have considered all of the other claims raised by the defendant, none of them has sufficient merit to warrant separate discussion. We therefore affirm appellant's drug convictions.

### CONCLUSION

Appellant contends, and the United States concedes, that his remaining gun conviction is inconsistent with *Bailey v. United States,* —— U.S. ——, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995). We agree and therefore vacate that conviction. He raises a number of challenges to his drug convictions. Finding none of these to have merit, we affirm.