699 So.2d 837 (1997)
STATE of Florida, Appellant,
v.
Ryan DANIELS and William Medico, Appellees.
No. 96-1636.
District Court of Appeal of Florida, Fourth District.
October 1, 1997.
Robert A. Butterworth, Attorney General, Tallahassee, and David M. Schultz, Assistant Attorney General, West Palm Beach, for appellant.
Steven W. Gomberg, West Palm Beach, for appellees.
PARIENTE, Judge.
The state appeals from the trial court's order that set aside jury verdicts of guilt and dismissed the informations against both defendants. Because the trial court erroneously concluded that the failure of the police to record the drug transaction on tape constituted *838 a denial of due process, we reverse the order of dismissal.
Defendants were convicted of attempted purchase of cocaine. The charges arose from a reverse sting operation conducted by the Palm Beach County Sheriff's Office. On the evening in question, Officer Pleasant was posing as a drug dealer when, according to his testimony, defendants attempted to purchase cocaine from him.
Officer Pleasant was equipped with a Unitel one-way transmitting unit, which allowed other officers to monitor the drug transactions. A second officer was positioned in a van nearby with a clear view of Officer Pleasant and defendants. According to Officer Pleasant, the second officer was able not only to observe the transaction, but to hear it by utilizing a Unitel monitoring unit. It is uncontroverted that no tape of the transaction involving defendants ever existed.
The reverse sting operation was typical of others previously conducted by the sheriff's office. The sheriff's office conducted as many as thirty reverse sting operations per week. According to trial testimony, the Unitel device was never used to record reverse sting operations but was instead used as a precautionary measure to monitor the transaction in case the undercover officer needed assistance.
In granting the dismissal, the trial court relied on United States v. Bryant, 439 F.2d 642 (D.C.Cir.1971). In Bryant, a potentially exculpatory tape recording of a drug transaction involving the defendants was made but later lost. The Bryant court held that the failure to preserve the recording denied defendants their due process rights. The trial court's order states that the "only distinction" between this case and Bryant is that in this case "the tape was intentionally not made." However, this is a distinction with a difference. Further, even if Bryant were factually on point, it is no longer good law because due process claims involving a failure to preserve evidence are now governed by Arizona v. Youngblood, 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988). See In re Sealed Case, 99 F.3d 1175, 1177 (C.A.D.C. 1997) (recognizing abrogation of Bryant); see also United States v. McKie, 951 F.2d 399, 403 (D.C.Cir.1991).
Depending on the individual facts of the case, the failure to preserve evidence already gathered may constitute a due process violation requiring dismissal of the complaint. See Youngblood, 488 U.S. at 55, 109 S.Ct. at 335-36; see also Kelley v. State, 569 So.2d 754, 756 (Fla.1990); Carter v. State, 665 So.2d 1112, 1114 (Fla. 4th DCA 1996). If the trial court is unable to determine whether the evidence would have been exculpatory, a due process violation arises only if there is a finding of bad faith in the failure to preserve the evidence. See Youngblood, 488 U.S. at 58, 109 S.Ct. at 337-38. A due process violation also arises where the prosecution suppresses material evidence favorable to the accused. See Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). Neither Youngblood nor Brady applies here because a tape of the transaction was never made.
There is no case law or statute imposing a duty on law enforcement to record a criminal transaction or to perform any particular tests even where, as here, the agency has the means to do so:
Law enforcement does not have a constitutional duty to perform any particular tests. Certain duties arise, however, once a policy of gathering evidence through certain tests is established. Once law enforcement has gathered and taken possession of evidence, a duty of preservation in some form attaches.
State v. Powers, 555 So.2d 888, 890 (Fla. 2d DCA 1990) (citations omitted); cf. Bartlett v. Hamwi, 626 So.2d 1040 (Fla. 4th DCA 1993).
In Powers, the defendants argued that their due process rights were violated because the sheriff's department did not videotape their performance of the field sobriety tests. The defendants testified that they believed a videotape of the tests would have proved that they performed the field sobriety tests better than the written reports indicated. Although there was testimony from the sheriff's department that it had never videotaped drivers performing field sobriety tests, *839 the trial court concluded that intentionally failing to preserve potentially exculpatory evidence demonstrated bad faith constituting a violation of due process. See Powers, 555 So.2d at 889.
The record here also does not reveal, nor did defendants ever assert, that bad faith on the part of law enforcement led to the decision not to tape the drug transaction. See Powers, 555 So.2d at 891. "[U]nless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process." Youngblood, 488 U.S. at 58, 109 S.Ct. at 337; see also Merck v. State, 664 So.2d 939, 942 (Fla.1995).
In reversing the trial court's order dismissing the DUI charges, the second district held that the issue was "not the failure to preserve evidence, but the failure to gather and preserve evidence in a particular manner." Id. at 891. Even assuming that the tape might have been exculpatory if the tests had been videotaped, the failure to record them did not deny the defendants the means to defend against the test results. Id. The defendants retained the right to cross-examine the officers who witnessed the tests and to present other evidence concerning the reliability of the tests. Id. Further, there was no showing that the sheriff's department "in bad faith" failed to videotape the defendants' performance of the tests. Id.
Here, in its order, the trial court expressed concern that the state based its case solely on the testimony of Officer Pleasant, who conducted the drug buy. Officer Pleasant made no official report or recording of the transaction. However, defendants were not denied the means to defend the charges by the failure of the police to record the transaction. Defendants were able to cross-examine the police officer and challenge his ability to recall the specifics of the transaction, absent a report or a tape to assist him. In fact, defendants elicited on cross-examination that Officer Pleasant had engaged in between 250 to 600 transactions during the course of his work while posing as a drug dealer. Approximately 150 of these arrests had taken place at the same intersection where he encountered defendants. Defendants took the stand and recounted an innocent version of their encounter with Officer Pleasant. Defendants were certainly able to argue to the jury that reasonable doubt was created by the absence of corroborating evidence.
If we were to uphold the trial court's order in this case, we would in effect be imposing an unbending legal requirement, of constitutional dimension, that all drug transactions must be taped when law enforcement has the readily-available means to do so.
If we were to require the state in every case, in its investigation of a crime, to leave no stone unturned and preserve the evidence obtained in a manner satisfactorily only to the accused, it would shift the line of fairness between the rights of an accused and the rights of society totally to one side.
Powers, 555 So.2d at 890 (citation omitted). Because the failure to record the reverse sting transaction was not done in bad faith and did not deprive defendants of the ability to defend against the charges, the failure to tape record this transaction did not render the convictions constitutionally infirm.
Our reversal of the trial court's order will not end the trial court's inquiry. Defendants' motion for new trial raised several alternate grounds, including the specific assertion that the verdict was contrary to the weight of the evidence. The trial court possesses the authority to order a new trial if it determines that the verdict is against the weight of the evidence. See State v. Smyly, 646 So.2d 238, 241(Fla. 4th DCA 1994); Fla. R.Crim. P. 3.600(a)(2). "In essence, the trial court acts as a safety valve by granting a new trial where `the evidence is technically sufficient to prove the criminal charge but the weight of the evidence does not appear to support the jury verdict.'" State v. Hart, 632 So.2d 134, 135 (Fla. 4th DCA 1994) (quoting Robinson v. State, 462 So.2d 471, 477 (Fla. 1st DCA 1984)).
As the order dismissing the charges makes abundantly clear, the trial court had serious questions about the weight and credibility of the state's evidence. However, the trial court never directly addressed and never ruled on defendants' request for a new trial, *840 choosing instead a course that defendants did not requestthe more extreme remedy of dismissing the charges. See Smyly, 646 So.2d at 242. Accordingly, we reverse the order of dismissal but remand for the original trial judge assigned to the case to rule on the specific grounds raised in the motion for new trial.
POLEN and KLEIN, JJ., concur.