820 So.2d 1016 (2002)
STATE of Florida, Appellant,
v.
Telly Lenard ANDREWS, Appellee.
Nos. 4D01-1665, 4D01-1666.
District Court of Appeal of Florida, Fourth District.
July 3, 2002.
*1018 Robert A. Butterworth, Attorney General, Tallahassee, Michael J. Neimand, Senior Assistant Attorney General, Fort Lauderdale, and Ira D. Karmelin, Special Assistant Attorney General, West Palm Beach, for appellant.
Carey Haughwout, Public Defender, and James W. McIntire, Assistant Public Defender, West Palm Beach, for appellee.
HAZOURI, J.
Telly Lenard Andrews ("Andrews") was charged by information with the attempted first degree murder of Officer MacVane, a law enforcement officer (count I), fleeing or attempting to elude a police officer (count II), and driving while license suspended (count III). Following a jury trial, he was found guilty of attempted second degree murder of a police officer (a lesser included offense of count I) and guilty of counts II and III as charged. Andrews moved for a new trial on counts I and II. The trial court entered an order granting a new trial on count I on the basis that the verdict was contrary to the weight of the evidence and denying all other relief requested. Andrews was convicted of counts II and III. The State timely appeals from this order. Andrews cross-appeals.
On January 6, 2000, just before sundown, Officers MacVane and Lichter were in their marked police vehicle when they decided to stop Andrews for driving a vehicle with a taillight that was not working. They pursued the vehicle with lights and siren on, but Andrews did not pull over and a high speed chase ensued. The officers curtailed their pursuit and lost sight of Andrews. However, they soon saw him driving through an alley. The officers attempted to block Andrews in the alley, so that they could arrest him. Officer MacVane proceeded on foot into the alley. *1019 Officer Lichter proceeded in the patrol car to the end of the alley where Andrews had entered.
Officer MacVane testified on behalf of the State as follows: He ran southbound toward the alley, running across a concrete pad and into the alleyway. He saw Andrews' vehicle stopped in the alley next to a trash pile (photographs and diagrams of the scene place the trash pile across from the concrete pad). The vehicle was facing west, in Officer MacVane's direction. Andrews was standing in front of the trash pile. He ran toward Andrews and directed him to get away from the car. Andrews got in his car, which was running, and stepped on the accelerator, gunning the engine. According to Officer MacVane, he was in the path of the oncoming vehicle which was headed straight at him. The officer heard the roar of the engine and thought Andrews was going to kill him so he began to run out of the alley toward his left (north side of the alley and the same direction from which he entered), pulling out his gun in the process and shooting. He testified, the car "seemed to like float" in his direction and he shot numerous times at the vehicle. He fired the first shot from the alley as the vehicle was headed at him. The officer explained that it felt like either the car or a gush of wind slapped the side of his pant leg as he was shooting and running out of the way. He stopped shooting when he realized the vehicle had passed him. Officer Lichter arrived and called dispatch.
Tyra Drummer, who lived in the area and witnessed the event in the alley, testified on behalf of the State as follows: She observed Officer MacVane exit his vehicle with his gun in his hand. She stood behind a palm tree, north of the concrete pad. She saw Officer MacVane run and start shooting as Andrews' car drove by. She then saw the officer get behind the car and shoot at the back of the car. She indicated that Officer MacVane was on the concrete pad when he fired the first shot, not near Andrew's car, and that he fired six to seven shots.
During direct examination, the prosecutor questioned Drummer regarding where she was standing when she viewed the event. She testified that she was standing behind a palm tree but was not able to locate the specific palm tree in photographs of the scene. The prosecutor asked Drummer various questions regarding what was north and south and what was east and west. Drummer was apparently confused and indicated that she was not sure which direction was which. Nevertheless, she was able to indicate on diagrams and photographs of the scene where the palm tree was located, where she was standing when she witnessed the event and where the officer was standing when he shot at Andrews' vehicle. Defense counsel later called Drummer on Andrews' behalf. She testified that she returned to the crime scene, stood in the same spot from which she viewed the event and took a photograph from that location. She indicated that it appeared that the specific palm tree she was standing behind had been dug up. The photograph admitted into evidence reveals that Drummer had a clear view of the event from the location where she was standing.
Andrews testified in his defense that he was about to get into his car to drive away when he saw Officer MacVane come around a building with his gun drawn. He explained that he decided to drive away because he was scared. He indicated on a diagram that his vehicle was down the alley (approximately 70 feet away from the concrete pad). He testified consistently with Tyra Drummer that Officer MacVane was standing on the concrete pad when he started shooting at him. He explained *1020 that the officer only stepped off the concrete pad and into the alley when he shot him from behind. Although Andrews was wounded, he drove his vehicle to a relative's home where he collapsed.
There was also testimony regarding the physical evidence in the case. Officer MacVane shot at the vehicle seven times and four of those shots struck Andrews. Five shell casings were found the evening of the incident, two in the alley and three on the concrete pad. The following day, two shell casings were found in the grass by the concrete pad. It was undisputed that the shell casings came out of the side of the gun and ejected to the right and back of the shooter. However, the testimony differed with regard to how far the shell casings might jump or bounce once they hit the ground.
With regards to the vehicle, the parties did not dispute the point of entry and the order of each shot into the vehicle. The first shot ricocheted off the hood of the car (creating a groove), before entering the vehicle through the front windshield. The second shot entered the front windshield, the third shot entered the roof by the passenger side, the fourth shot entered through the rear passenger window and the fifth through seventh shots entered through the back windshield.
William Fraser, an investigator, testified on behalf of the State. He examined the location of the shell casings found on the scene and determined that Officer MacVane could not have been standing on the concrete pad when he fired the shots as testified to by Tyra Drummer. He also determined from looking at the groove in the hood of Andrew's vehicle that Officer MacVane must have been standing in front of the vehicle when he shot at it. However, he acknowledged that he never performed any tests nor measured the groove on the hood and that he is not an expert.
Gregory Parkinson, an investigator, also testified on behalf of the State. Although not a firearm expert, he performed laser and string tests to determine the trajectory of the bullets. He determined based on these tests that Officer MacVane was standing five to seven feet away from the right front headlight of the vehicle when he fired the first shot. He acknowledged that his calculation was based on an assumption that the officer was holding the gun 55 inches from the ground and that he did not analyze the hood of the car to determine if there was gun powder residue. He also determined that the average distance a shell casing would roll was 11.5 feet and drew a 11-foot radius around the shell casings in order to aid him in ascertaining where the officer was located. He acknowledged that Andrews' vehicle creates skid marks and that there were no skid marks at the scene to corroborate the officer's testimony that Andrews took off at a high rate of speed.
Dennis McGuire, who worked for 23 years as a forensic evidence examiner for the Metro Dade Police Department Crime Lab and retired in 1991, testified on behalf of Andrews. He explained that neither the string nor laser tests are generally accepted as a way to test a vehicle for a ricochet trajectory. He determined that Officer MacVane's testimony was not consistent with the physical evidence. He explained that if the vehicle were standing where the officer indicated, there was no acceleration window, giving the officer an opportunity to step out of the way. He also determined that the placement of the shots indicated that the officer was in a single position when he shot at the vehicle. He explained that if the officer had to move out of the way of the car and was shooting as he was trying to get out of the way, then the shots would have been erratic and the relative placement would not *1021 have been as consistent. McGuire also performed a laser test and determined that the officer could have been standing where he testified or up to 19 feet away at a further distance and to the right as Andrews and Tyra Drummer testified. He explained that the first shot could have originated from the front bumper to anywhere back along the trajectory of the bullet because the angle of the groove on the hood of the car could not be accurately determined but could only be estimated. A difference of just two degrees could place the officer either in harm's way or out of harm's way. He explained that the best testing method would have been to fire standards and compare known angles of incidence with the hood, using the same gun, ammunition and type of vehicle. McGuire also performed ejection tests, where shell casings jumped about seven feet to the right and 5.39 feet to the rear of the shooter, revealing that the place where shell casings were found was not consistent with where the officer testified he was standing.
Andrews was found guilty of attempted second degree murder of a police officer (a lesser included offense of count I), and guilty of counts II and III as charged. Following the jury verdict, defense counsel filed a motion for a new trial on counts I and II raising numerous grounds, including that the verdict was contrary to law and the weight of the evidence and the trial court erred when it admitted the testimony of State Attorney Barry Krischer.
The trial court entered an order granting a new trial on count I on the basis that the verdict was contrary to the weight of the evidence and denying all other relief requested. The State argues that the trial court abused its discretion when it granted Andrews a new trial on count I.
"In reviewing a motion for a new trial, the trial court must consider both the weight and sufficiency of the evidence." State v. Hart, 632 So.2d 134 (Fla. 4th DCA 1994). In Tibbs v. State, 397 So.2d 1120 (Fla.1981), aff'd, 457 U.S. 31, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982), the Florida Supreme Court explained the difference between these two concepts:
The weight and the sufficiency of evidence are, in theory, two distinct concepts most often relevant at the trial court level. Sufficiency is a test of adequacy. Sufficient evidence is "such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded." Black's Law Dictionary 1285 (5th ed.1979). In the criminal law, a finding that the evidence is legally insufficient means that the prosecution has failed to prove the defendant's guilt beyond a reasonable doubt. Weight, at least in theory, is a somewhat more subjective concept. The "weight of the evidence" is the "balance or preponderance of evidence." Black's Law Dictionary 1429 (5th ed.1979). It is a determination of the trier of fact that a greater amount of credible evidence supports one side of an issue or cause than the other.
Id. at 1123 (citations omitted) (footnote omitted). The court went on to explain:
At the trial level, the weight-sufficiency distinction is apparent in our Rules of Criminal Procedure. We noted in McArthur v. Nourse, 369 So.2d 578 (Fla. 1979) that:
[a] critical distinction has existed at least since 1967, when rules 3.380 (formerly 3.660) and 3.600 of the Florida Rules of Criminal Procedure were adopted. Rule 3.380(a) provides that a motion for judgment of acquittal should be granted if, at the close of the evidence, "the court is of the opinion that the evidence is insufficient to warrant a conviction." In contrast, *1022 rule 3.600(a)(2) provides that a motion for new trial shall be granted if the jury verdict is "contrary to law or the weight of the evidence."

Id. at 580 (footnote omitted) (emphasis added). Rule 3.600(a)(2) thus enables the trial judge to weigh the evidence and determine the credibility of witnesses so as to act, in effect, as an additional juror. It follows that a finding by the trial judge that the verdict is against the weight of the evidence is not a finding that the evidence is legally insufficient.
Id. at 1123 n. 9 (citation omitted).
When determining the weight of the evidence, "[i]n essence, the trial court acts as a safety valve by granting a new trial where `the evidence is technically sufficient to prove the criminal charge but the weight of the evidence does not appear to support the jury verdict.'" Hart, 632 So.2d at 135 (quoting Robinson v. State, 462 So.2d 471, 477 (Fla. 1st DCA 1984), rev. denied, 471 So.2d 44 (Fla.1985)). "[T]he trial judge sits as the seventh juror with a veto over the unanimous vote of the other six." State v. Smyly, 646 So.2d 238, 241 (Fla. 4th DCA 1994).
Orders granting new trials in criminal cases on the basis of the weight of the evidence are reviewed under the abuse of discretion standard. Additionally, a stronger showing is required to overturn an order granting a new trial than to overturn an order denying a new trial. If reasonable people could differ as to the propriety of the action taken by the trial court, then the action is not unreasonable and there can be no finding of an abuse of discretion. See Hart, 632 So.2d at 134-35.
Nevertheless, that discretion is not without limits and a reversal may be warranted where the evidence clearly supports the jury's verdict. See State v. Coffman, 746 So.2d 471 (Fla. 2d DCA 1998) (reversing order granting a new trial on the basis of weight of the evidence where defendant was found guilty of aggravated child abuse based on malicious punishment and State's experts' testimony clearly negated any reasonable hypothesis that the child's injuries occurred as a result of something or someone other than the defendant); State v. Monroe, 691 So.2d 518 (Fla. 2d DCA 1997) (reversing order granting a new trial on the basis of weight of the evidence where all of the eye witness testimony and all of the physical evidence, with the exception of a single photograph, pointed to the defendant as the perpetrator); State v. Harris, 660 So.2d 285 (Fla. 5th DCA 1995) (reversing order granting new trial on the basis of weight of the evidence where "there was independent and unimpeached testimony that clearly supports the jury's conclusion").
The State argues the trial court abused its discretion because the record does not support the trial court's finding that the verdict is contrary to the "weight of the evidence." The State's argument is based on the following assertions: (1) the trial court focused on the moment in time when Officer MacVane moved out of the vehicle's path, rather than considering the event from the point at which Andrews began driving toward Officer MacVane, (2) the trial court abused its discretion in giving any weight to Tyra Drummer's testimony because she was not an independent witness[1] and it was physically impossible for her to have seen the offense, and (3) the defendant confessed in court to having the ability to drive away from Officer MacVane.
*1023 In the order granting a new trial, the trial court found: Officer MacVane testified that Andrews attempted to run over him with the vehicle, MacVane testified that the car did not make a violent turn into him but as he was moving, it seemed "to like float in [his] direction"; Andrews testified that he was merely trying to get away because Officer MacVane had his weapon drawn and began firing at his vehicle; seven bullets struck Andrews' vehicle and four of those struck Andrews; there was no dispute that most of the shots fired at Andrews were fired by the officer after Andrew's vehicle had already passed the officer; and Tyra Drummer, the only independent witness, testified that Officer MacVane was not in harm's way.
The trial court's findings are supported by competent substantial evidence in the record. In its findings, the trial court did focus on the moment in time when Andrews' vehicle was closest to Officer MacVane. This is not unreasonable, because where Officer MacVane was standing as the vehicle went down the alley was a disputed issue. The fact that Andrews drove in the officer's direction alone is not an indication that the officer was in harm's way if the officer was standing off to the side and Andrews did not swerve the vehicle in his direction. Apparently, the trial court determined that the weight of the evidence indicated that Officer MacVane was not standing in harm's way. This finding was not an abuse of discretion in light of the testimony of Tyra Drummer and Dennis McGuire, the defense expert.
The State's argument that the trial court abused its discretion when it relied on Tyra Drummer's testimony is not persuasive. It was up to the trial judge to determine if her testimony was credible. See Hart, 632 So.2d at 134-35 (holding that the trial judge did not abuse his discretion by determining the credibility of the witnesses). There was no indication that it was physically impossible for her to see the event. A photograph taken from where she testified she was standing was submitted into evidence and the photograph clearly shows that she could see the location of the shooting. The State did not present any evidence to dispute her testimony that she was in fact standing behind a palm tree and that the palm tree had later been removed. Further, her testimony at trial was consistent with what she told officers occurred on the night of the incident.
The State's argument that Andrews' testimony does not support the trial court's decision is also not persuasive. Andrews testified that he drove in the direction that Officer MacVane was standing and acknowledged that he could have placed the vehicle in reverse and backed out of the alley. The fact that Andrews may have been able to reverse out of the alley does not support a verdict of attempted second degree murder. Andrews may have driven in the general direction of Officer MacVane and yet not driven directly at the officer so as to place him in harm's way.
Further, this case is distinguishable from those cases relied upon by the State where a trial court's order granting a new trial was reversed. Unlike Coffman, in this case the State's expert did not clearly negate Andrews' and Tyra Drummer's version of events. Unlike Monroe, in this case all the eye witness testimony does not support the jury verdict. Unlike Harris, in this case the independent witness testimony supports Andrews' version of events not the jury's verdict. Therefore, the State has failed to show that the trial court abused its discretion when it granted a new trial.
On cross-appeal, Andrews argues that the trial judge abused his discretion when he allowed State Attorney Barry Krischer *1024 to testify. We agree and write on this issue to provide guidance to the trial court upon re-trial.
At trial, during opening statements, defense counsel argued that when Officer MacVane shot at Andrews, he was not in any danger because he was standing on the concrete pad and not in the alley. Defense counsel argued, "[I]t is Officer MacVane who should be on trial for attempted first-degree murder because the evidence will show that Mr. Andrews' car was coming down this alleyway escaping from the police and that Mr.Officer MacVane was standing on a concrete slabyou'll see plenty of picturesfar from the street, shooting at the car." The State did not object.
The State later argued that defense counsel opened the door during his opening statement to the issue of whether Officer MacVane was justified in shooting at Andrews. The State called State Attorney Barry Krischer to testify as an expert in justifiable use of force. Defense counsel objected arguing that it was prejudicial and irrelevant testimony. The trial court overruled the objection but noted that it would be improper for Krischer to opine as to whether Officer MacVane's conduct was right or wrong.[2] During direct examination, the prosecutor asked Krischer whether it was appropriate to charge Officer MacVane with a crime? He responded, "I did consider it and there are no charges, his behavior was appropriate." Defense counsel objected and moved for a mistrial. The trial court overruled the objection and denied the motion. During cross-examination, defense counsel established that Krischer did not conduct any tests at the crime scene, and that there was no basis for an expert opinion. Defense counsel moved for a new trial at the conclusion of the State's case and at the conclusion of the trial.
Andrews argues that the trial court erred when it allowed State Attorney Krischer to testify that Officer MacVane's behavior was appropriate. Andrews asserts that the testimony was prejudicial and irrelevant as this was an issue to be decided by the jury. We also note that the trial court's denial of defense counsel's objection to the testimony directly conflicted with its earlier ruling prohibiting Krischer from testifying that Officer MacVane's conduct was right or wrong. Characterizing Officer MacVane's conduct as "appropriate" as opposed to "right" is a distinction without a difference.
The State contends that defense counsel opened the door to Krischer's testimony during opening statements. "As an evidentiary principle, the concept of `opening the door' allows the admission of otherwise inadmissible testimony to `qualify, explain, or limit' testimony or evidence previously admitted." Ramirez v. State, 739 So.2d 568, 579 (Fla.1999) (citing Tompkins v. State, 502 So.2d 415, 419 (Fla. 1986)). "The `opening the door' concept is based on considerations of fairness and the truth-seeking function of a trial." Bozeman v. State, 698 So.2d 629, 631 (Fla. 4th DCA 1997). However, comments made by defense counsel during opening statements are not evidence and do not "open the door" to rebuttal testimony by state witnesses on matters that have not been placed in issue by the evidence. See Burns v. State, 609 So.2d 600, 605 (Fla. 1992).
*1025 Alternatively, the State contends that defense counsel placed the issue of whether Officer MacVane should have been charged with the attempted murder of Andrews into evidence when he cross-examined Officer MacVane. During the cross-examination of Officer MacVane, defense counsel challenged his credibility by asking questions regarding whether he would be able to retain his position as an officer if he were convicted of attempted murder. Defense counsel's line of questions insinuated that Officer MacVane's credibility or testimony at trial should be questioned because he had reason to fear being charged with attempted murder. If he feared being charged, then his use of force may have not been justifiable, and hence, he may have not been in harm's way. Thus, defense counsel opened the door for the State to present evidence on the issue of whether Officer MacVane's use of force was justified.
The State relied upon State Attorney Barry Krischer's expert testimony that the officer's actions were appropriate and his use of force was justified. Generally, expert testimony is admissible if the disputed issue is beyond the ordinary understanding of the jury. A trial court's decision to allow expert testimony is reviewed for abuse of discretion. However, that discretion is not boundless, and expert testimony should be excluded where the facts testified to are of such a nature as not to require any special knowledge or experience in order for the jury to form conclusions from the facts. See Johnson v. State, 393 So.2d 1069, 1071-72 (Fla.1980); Nelson v. State, 362 So.2d 1017 (Fla. 3d DCA 1978); Johnson v. State, 314 So.2d 248 (Fla. 1st DCA 1975).
Whether Officer MacVane was standing in harm's way and therefore was justified in discharging his firearm in defending himself from the oncoming vehicle was for the jury to determine.[3] This determination could have been made from the testimony of Officer MacVane, Andrews, Tyra Drummer and the expert's testimony on the physical evidence. There was no basis for the State Attorney to give his opinion on the matter.
The State's argument that Krischer's opinion was proper because he was not the prosecutor on the case and was called to testify as a factual witness is not persuasive. He was not a factual witness. He was not an eye witness, he specifically testified that he did not perform any tests at the crime scene, and he gave no testimony regarding the physical evidence at the scene.
Thus, the trial court abused its discretion when it overruled defense counsel's objection to the testimony. This error was not harmless with regard to count I since the prosecutor referred to the testimony in closing, the case turned on the credibility of Officer MacVane and the independent eye witness testimony of Tyra Drummer was contrary to that of Officer MacVane. Therefore, this presents an alternate basis for affirming the trial court's decision to grant a new trial on count I, attempted second degree murder. However, the error was harmless with regard to count II, fleeing and eluding, as Krischer's testimony was restricted solely to Officer MacVane's actions in the alley.
*1026 Accordingly, the trial court's order granting a new trial on count I and denying all other relief is affirmed.
AFFIRMED.
WARNER and STEVENSON, JJ., concur.
NOTES
[1] Officer MacVane testified that he had prior contact with Drummer, because he had previously arrested her boyfriend. He testified that she was mad at the officers as a result.
[2] When deciding whether to allow Krischer to testify, the trial court stated, "It seems like so much of this is not relevant.... But I'm going to allow Mr. Krischer to testify. I am not going to allow him to say that this police officer was right or this police officer was wrong."
[3] During the re-direct of Officer MacVane, the prosecutor attempted to ask him whether he had been exonerated by the internal affairs investigation. The trial judge sustained defense counsel's objection, recognizing that whether Officer MacVane was exonerated by an internal affairs investigation was irrelevant for the jury's determination. He stated, "I think what IA [Internal Affairs] does isn't any concern of what this jury does." Likewise, absolution by the State Attorney is equally inappropriate for the jury's considerations.