■ In the Matter of DAVID M., Petitioner, v M. ANDREW DWYER, JR., as Rensselaer County Court Judge, et al., Respondents. — Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to CPLR 506, subd [b], par 1) to prohibit respondents from obtaining blood and hair samples of petitioner.

Petitioner is a 17-year-old male who was arrested and charged with murder in the second degree, robbery in the first degree and burglary in the first degree. Following a preliminary examination, the City of Troy Police Court dismissed these charges for lack of probable cause. Petitioner was thereupon discharged from custody as to the felony charges, but remained incarcerated in the Albany County Jail on pending unrelated matters. To further their investigation of the felony charges, the People thereafter sought an order compelling petitioner to provide blood and hair samples. The County Court of Rensselaer County granted this application in an order dated October 3, 1984; that order has been stayed pending determination of this proceeding.

A CPLR article 78 proceeding in the nature of prohibition is a remedy which may be availed of by a suspect who seeks protection from a court order directing that he furnish bodily samples

(*Matter of Abe A.*, 56 NY2d 288, 296, n 3; *Matter of Brown v Monserrate*, 101 AD2d 674 ). To secure such an order, the People must establish the following three elements:

"(1) probable cause to believe the suspect has committed the crime,

"(2) a 'clear indication' that relevant material evidence will be found, and

"(3) the method used to secure it is safe and reliable. In addition, the issuing court must weigh the seriousness of the crime, the importance of the evidence to the investigation and the unavailability of less intrusive means of obtaining it, on the one hand, against concern for the suspect's constitutional right to be free from bodily intrusion on the other" (*Matter of Abe A., supra,* p 291).

Initially, petitioner contends that probable cause to believe that he committed the crimes under investigation was lacking, not only because the People have not yet indicted him but also because the evidence purporting to incriminate him is hearsay. A formal charge, however, is not a precondition for a judicial directive compelling a suspect to make himself available for the drawing of his blood (*id.*, at pp 296-297). A finding of "reasonable cause" or "probable cause", which terms are interchangeable here (see *Veras v Truth Verification Corp.*, 87 AD2d 381, 384, affd 57 NY2d 947), can, by statute, be based on reliable hearsay evidence (CPL 70.10, subd 2). Attached to the People's moving papers in support of their application for permission to take petitioner's blood and hair samples are statements from various people containing inculpatory admissions allegedly made by petitioner. The People also have possession of a sweat shirt allegedly worn by petitioner at the time of the crime; the sweat shirt was bloodstained, presumably as a result of petitioner's participation in the crime. In our view, probable cause was established.

There is merit, however, to petitioner's contention that there is no clear indication that the intrusion sought "will supply substantial probative evidence" (*Matter of Abe A., supra,* p 297). While the scientific validity and reliability of tests used to identify and collate blood samples are not open to question (*id.*, at p 299), the only evidence put before County Court by the People consists of an affidavit from an evidence technician with the Troy Police Department who "observed numerous blood stains in and about the area where the deceased was lying", and the bloodstained sweat shirt worn by petitioner. There are no serological tests establishing that blood other than that of the decedent was found at the crime scene or that the blood on the

sweat shirt was of the decedent's type. Furthermore, petitioner is not the only suspect; another person already has been indicted. In short, the People have not satisfactorily demonstrated the conclusiveness or probative value of the blood test they seek.

Nor, on the present record, is the taking of hair samples from petitioner warranted. To support this request, the People merely offer the evidence technician's averment that: "at the autopsy, [he] personally removed several hairs from the body of the deceased, which did not appear to be in a natural state. * * * These hairs were found lying upon the body of the deceased, not attached to [it] in any way, and were of such a nature that they did not appear to belong on that portion of the deceased's person." What, if any, scientific importance comparison tests of hair have and whether performing them will narrow the field of suspects to any appreciable degree is not set forth.

Since the conclusiveness or probative value of the proposed tests comparing blood and hair samples has not been satisfactorily established, a hearing should be held and expert testimony received on these issues (see, e.g., *Matter of Brown v Monserrate, supra*). In the interim, determination of this proceeding will be held in abeyance.

Decision withheld, and matter remitted to the County Court of Rensselaer County for further proceedings not inconsistent herewith. Kane, J. P., Main, Weiss, Mikoll and Yesawich, Jr., JJ., concur.