(January 23, 1986)

■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v WESLEY A. DEMMING, Appellant.—Yesawich, Jr., J. Appeal from a judgment of the County Court of Tompkins County (Barrett, J.), rendered December 21, 1983, upon a verdict convicting defendant of the crime of murder in the second degree.

Defendant stands convicted of murdering Wendy Oltz, a girl in her early teens. Her body was discovered on December 28, 1982, at about 8:45 A.M. in an alley behind a restaurant in the City of Ithaca. When found, it was enshrouded with towels and aprons removed from the restaurant's laundry bag located outside the building. Death occurred between 10:00 P.M. on December 27 and 1:30 A.M. on December 28, 1982, and was due to multiple stab wounds. A forensic serologist called by the People testified that blood spattered on the nearby door of the restaurant contained the same characteristics as the victim's blood and a fingerprint expert declared that a fingerprint embedded in the blood on the door was unequivocally defendant's. A search of the home where defendant was staying at the time produced bloodstained blue jeans which were admitted into evidence. Blood on those trousers was consistent with Oltz's blood; only 3.8% of the general population share those same characteristics.

Concededly, the victim had been in defendant's company on the evening of December 27, 1982 at a local pizza parlor. At approximately 10:00 P.M., they left together for the purpose of

taking a ride on defendant's motorcycle. Defendant, who was 42 years of age, testified that while riding with Oltz through a park which was close at hand, they were accosted by several males who purportedly knew Oltz, that one of them struck defendant over the left eye with a tire iron, that they then disabled his motorcycle, that Oltz voluntarily left with defendant's assailants and he never saw her again.

There was also proof by the People that at about 11:00 P.M. or 11:15 P.M. on December 27, defendant was observed in a dairy store, not far from where Oltz's body was ultimately discovered, wearing blue jeans, a red bandana around his forehead, with blood trickling down his face from a cut above the left eye, and a sheath knife case in his back pocket. At approximately 3:30 A.M. that morning he had the wound, a small laceration, treated in the emergency room of the local hospital by a physician; the doctor opined that the wound had not been inflicted by a tire iron. Because defendant claimed to have been assaulted, the police were then summoned, at which time defendant related the circumstances of the alleged assault; however, it was not until several hours later that he apprised the police that his knife was missing.

The jury chose to disbelieve defendant and determined he was guilty of the slaying. A sentence of 25 years to life imprisonment was imposed. Since the People prevailed at trial, we are obliged to view the evidence in a light most favorable to the People and to assume that the jury credited the People's witnesses (People v Lewis, 64 NY2d 1111, 1112; People v Kennedy, 47 NY2d 196, 203). Applying that standard, we affirm.

Defendant presses a variety of grievances relating to the manner in which the trial was conducted. His contention that the court interfered excessively and on occasion acted as the People's advocate is not borne out by the record. In point of fact, the court rarely questioned witnesses and when it was so engaged, it did so with a view to clarifying the proof, particularly complex expert testimony. Further, we perceive nothing in the court's involvement that could reasonably be interpreted by the jury as an expression of an opinion by the Trial Judge as to the merits of the case (see, People v Jamison, 47 NY2d 882).

Nor was defendant denied a fair trial by reason of the People's conduct at trial. To warrant a new trial on this ground, a flagrant and pervasive pattern of prosecutorial misconduct must be demonstrated (People v Lucas, 105 AD2d 545, 547). While there may have been instances where the

prosecutor's tactics overstepped the bounds of proper advocacy, it was as to matters which, given the length of this trial, were of a comparatively minor nature—e.g., leading questions were commonplace. And while there were some transgressions in the People's summation (see, People v Morgan, 66 NY2d 255), objections thereto, when appropriate, were invariably sustained and though on occasion curative instructions were not issued, the court in its charge minimized the prejudicial effect of any prosecutorial excesses.

Defendant also finds reversible error in various court rulings, among them the admissibility in evidence of test results of defendant's blood and blue jeans which defendant maintained he never owned, wore or controlled. Test results of a sample of defendant's blood were received without a pretrial evidentiary hearing first having been held to establish the probative worth of the blood analysis; defendant claims that despite the fact a pretrial motion directing the blood sample be taken was granted, Matter of Abe A. (56 NY2d 288) makes an evidentiary hearing indispensable. We conclude otherwise. Because the victim's blood was of a comparatively rare type and the prosecutor represented that the bloodstains on the blue jeans were consistent with Oltz's blood type (cf. Matter of David M. v Dwyer, 107 AD2d 884), analysis of a sample of defendant's blood to exclude the possibility he had blood identical to that uncovered on the trousers was clearly probative, for it had the effect of yielding evidence of his presence at the scene of the crime (cf. People v Mountain, 66 NY2d 197). In these circumstances, an evidentiary hearing for the purpose of establishing the worth of the test was superfluous.

And the blue jeans were sufficiently linked with defendant to enable the jury to infer they were defendant's. Pursuant to search warrants, the jeans had been taken, together with a red bandana, from near a couch located in the living room of a house inhabited by defendant; on previous visits the police had observed these items laying at defendant's feet. The trial court's rejection of defendant's assertion that the trousers may have belonged to two other men who resided there was fully justified, for the latter were never shown to have been implicated in the murder. As the connection between the blue jeans and defendant was not so tenuous as to be improbable, they, too, were properly allowed into evidence (see, People v Mirenda, 23 NY2d 439, 453).

Also unconvincing is the argument that the trial court, over defendant's objection, impermissibly amended the indictment

which charged that the killing took place "[b]etween the hours of 10:15 P.M. and 11:00 P.M. in the evening on December 27, 1982, the exact time being unknown". Defendant takes umbrage at the court's instruction to the jury that "if you find that * * * on or about December 27, 1982 * * * defendant stabbed Wendy Oltz * * * then you may find the defendant guilty of * * * murder in the second degree". Though the charge modified the indictment, expanding the time frame within which the murder could have occurred, the theory of the prosecution was unchanged from that in the indictment. Furthermore, it does not appear the court's charge affected the defense's trial strategy, which from the start was to urge that the People could not prove defendant committed the crime at the time charged. In this regard, we note that the court's charge differed from the indictment only in that it provided the homicide may have happened after 11:00 P.M., but the crucial period in the indictment, 10:15 P.M. to 11:00 P.M., remained unaccounted for credibly by defendant. Inasmuch as defendant suffered no recognizable prejudice because of the court's instruction, the error, if there be any, was harmless (see, People v Owens, 63 NY2d 824, 826).

Nor are we amenable to the suggestion that the court marshaled the evidence other than impartially or that a court attendant's communication with the jury warrants reversal. That the court's summary of the People's proof was considerably more extensive than that accorded defendant's case was undoubtedly due to the fact that the People's case consisted of far more witnesses and, in part, to the court's conscious choice not to describe all of defendant's actions and versions of the events of that evening for fear of drawing undue attention to the inconsistencies and differences they embodied; one such version was that defendant had been engaged in a knife fight while walking a young lady friend home through the park.

The court employee's inquiry of the jury, while they were deliberating, respecting whether they would need lodging accommodations for the evening or if they expected to reach a verdict, all made with the assurance that they were not being rushed, clearly was not reprehensible. In making that request, it was 9:00 P.M. at the time, the attendant was obviously prompted by a genuine concern for the ability of court personnel to ensure that motel rooms would be available for the jury panel should they be sequestered. In doing so, the attendant was merely performing a routinely undertaken and authorized administrative duty (CPL 310.10; cf. People v Ciaccio, 47 NY2d 431).

We have considered defendant's remaining points and find them also unavailing.

Judgment affirmed. Main, J. P., Weiss, Mikoll, Yesawich, Jr., and Levine, JJ., concur.