The STATE, Respondent v. Johnny Kenneth REGISTER, II, Defendant.
In re Jane DOE, Petitioner/Appellant.
(419 S.E. (2d) 771)

Supreme Court

July 6, 1992.

## ORDER

Johnny Kenneth Register (Register) has been indicted, but not yet tried, for the murder of Crystal Todd. Before she was killed, Miss Todd was raped and sodomized. After her death, the attacker mutilated the victim's body with a knife. According to the State, DNA testing indicates that semen obtained from the mouth, vagina and rectum of the body matches samples obtained from Register. Apparently, after Register admitted that he had intercourse with the victim in his car, police found semen and blood stains, as well as a pubic hair, in Register's car. However, in his statement to the police, Register claims that any such stains or hairs were the results of having intercourse with his girlfriend in the car. His girlfriend is the fifteen-year-old petitioner/appellant Jane Doe.

Pursuant to Register's claim, the State asked Jane Doe to provide samples of her blood, saliva, and pubic and head hair for testing. Doe refused to cooperate. The State then petitioned the circuit court for an order requiring the taking of these samples from Jane Doe and the comparison of them to the samples found in Register's car. After a hearing, the trial judge found that:

the property sought is reasonably related to the identity of the perpetrator of a violent homicide and rape. That the minor [sic] and and the probative value of this property far exceeds any prejudice to the minor. Further . . . the procedures to be used are not overly intrusive or in any manner harmful to the minor.

Noting that this is an issue of first impression, he granted the State's motion. Jane Doe has appealed from this order and now petitions this Court for a Writ of Supersedeas.[1]

Jane Doe argues that the trial court's order is not in compliance with S.C.Code Ann. § 17-1-3-140 (1985) (Search Warrant Statute) or *In re: Investigation of the Death of Melinda Renee Snyder*, — S.C. —, 417 S.E. (2d) 572 (S.C. 1992) (Davis Adv. Sh. No. at 56). Jane Doe notes that the order "makes no finding of probable cause, nor does it address Fourth Amendment rights of the juvenile as to the rights of privacy, nor to the jurisdiction of the Court to order the production of samples." The State contends that the issue to be decided by this Court is whether there is sufficient probable cause to permit the acquisition of physical evidence from Jane Doe pursuant to § 17-13-140. We disagree.

We recently held that the Search Warrant Statute provides for the involuntary submission of nontestimonial evidence. *In re: Snyder, supra.* In *Snyder*, we also set forth guidelines and procedures for obtaining samples of blood and saliva, along with head and pubic hair, from unarrested suspects in criminal investigations.

Jane Doe is not a suspect, defendant or victim in *The State v. Johnny Kenneth Register, II.* Neither party has claimed

---

[1] Ordinarily this type of order is not directly appealable, *Cf., Ex parte Whetstone*, 289 S.C. 580, 347 S.E. (2d) 881 (1986). However, because we are dealing with a novel issue and the rights of a minor, we have chosen to address the merits of the petition.

that Jane Doe is a material witness to the crime itself. Further, at oral argument, there was no explanation given as to how her body fluids are pertinent to the crime for which Register is charged. The State contends that Jane Doe will be a material witness for it at trial in determining Register's whereabouts immediately prior to the murder of Miss Todd. Apparently, the State's primary purpose in seeking to obtain these samples is to negate a possible defense of Register. Therefore, an issue of first impression is presented to this Court: What standards are to be followed when judicial authorization is sought to compel a potential witness, who is neither a victim nor alleged to have been present at the scene of the crime, to supply the State with nontestimonial evidence?

An order issued pursuant to § 17-13-140 that allows the government to procure evidence from a person's body constitutes a search and seizure under the Fourth Amendment. *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed. (2d) 908 (1966). Therefore, the order must comply with constitutional guidelines as well as statutory ones. It is manifest that witnesses to a crime have the same Fourth Amendment protection against governmental intrusion into their bodies that defendants or suspects in criminal cases have. *E.g.*, *People v. Melton*, 44 Cal. (3d) 713, 244 Cal. Rptr. 867, 750 P. (2d) 741, *cert. denied* 488 U.S. 934, 109 S.Ct. 329, 102 L.Ed (2d) 346 (1988); *Shults v. Superior Court*, 133 Cal. App. (3d) 696, 170 Cal. Rptr. 297 (1980). The Court in *Schmerber* held that the Fourth Amendment permits minor intrusions beyond the body's surface only in stringently limited conditions, because such intrusions may readily offend those principles of dignity and privacy which are protected by the Fourth Amendment. *Id.*, 384 U.S. at 769-70, 86 S.Ct. at 1835, 16 L.Ed. (2d) at 919. The requirement that penetrations of the body be founded on strong showings of need are applicable equally to searches with and without a warrant. *People v. Scott*, 21 Cal. (3d) 284, 145 Cal. Rptr. 876, 578 P. (2d) 123 (1978).

The Considerations we set forth herein are essentially the same as those we promulgated in *In re: Snyder*, *supra*. We hold that where a warrant authorizing a bodily intrusion into a potential witness is sought, the State must initially show that there is probable cause to believe a crime has been committed, and probable cause to believe that

it was committed by a particular suspect. Once the court has found the existence of probable cause on both grounds, the State must then show (1) a clear indication that material evidence relevant to the question of the suspect's guilt will be found, and (2) that the method used to secure this evidence is safe and reliable. *In re: Snyder, supra.*

Once the State has shown probable cause and the two preceding factors are satisfied, the court must then determine whether the character of the requested search is appropriate. The court must balance the seriousness of the crime, the importance of the evidence to the investigation, and the unavailability of alternative, less intrusive means of obtaining the evidence, on one hand, against concern for the potential witness' constitutional right to be free from bodily intrusion on the other. *In re: Snyder, supra; In re: An Investigation into the Death of Abe A.*, 56 N.Y. (2d), 288, 452 N.Y.S. (2d) 6, 437 N.E. (2d) 265 (1982). "[T]he more intense, unusual, prolonged, uncomfortable, unsafe or undignified the procedure contemplated, or the more it intrudes upon essential standards of privacy, the greater must be the showing for the procedure's necessity." *People v. Browning*, 108 Cal. App. (3d) 117, 166 Cal. Rptr. 293 (1980). Therefore, *only* if this stringent standard is met, may the intrusion be sustained. *In re: Abe A., supra.*

It is impossible to set forth a rigid test to be applied in all circumstances. The factors we have promulgated must remain flexible in order to properly evaluate and balance the totality of the facts and circumstances presented in each particular case. Here, the trial judge's order fails to find either the existence of probable cause or a clear indication that the requested evidence is relevant to the question of Register's guilt. Further, the order completely fails to properly balance the necessity for acquiring involuntary nontestimonial identification evidence against constitutional safeguards prohibiting unreasonable bodily intrusions, searches and seizures.

Accordingly, the circuit court's order is vacated. The case is remanded to the trial court without prejudice to the State's right to reapply for an order under the guidelines set forth herein.

It is so ordered.