626 So.2d 1040 (1993)
Emma Jo BARTLETT, Petitioner,
v.
Paul HAMWI, Paul Serio and State of Florida, Respondents.
No. 93-2073.
District Court of Appeal of Florida, Fourth District.
November 10, 1993.
*1041 Steven Wisotsky, Fort Lauderdale, for petitioner.
Jane D. Fishman, Sp. Asst. Public Defender, Plantation, for respondent Paul Serio.
Michael J. Satz, State Atty., and Ralph J. Ray, Jr., Asst. State Atty., Fort Lauderdale, for respondent State of FL.
PARIENTE, Judge.
The issue before this court, presented by petition for writ of certiorari, is whether a prosecution witness in a criminal case may be ordered to submit her body for extraction of hair samples for testing requested by the defendant as part of his defense. We find that the witness would suffer irreparable harm by operation of the trial court's order and conclude that the circumstances presented do not justify a court order authorizing the taking of samples from a witness. By previous order we granted certiorari, and we now explain our reasoning.
Petitioner, Emma Jo Bartlett, is the 76 year old mother of Richard Purvis. Purvis was originally charged and convicted of a 1983 murder of Susan Hamwi and her infant daughter, Shane, for which the defendants are now accused. Purvis' conviction was set aside after newly discovered evidence, in the form of a confession from a participant in the crime, Robert W. Beckett, Jr., indicated defendant Paul Serio had committed the murder of defendant Hamwi's wife as a contract killing for defendant Paul Hamwi. Petitioner was listed as a prosecution witness, although the state contends this was only a precautionary step. One of the defendants, Paul Serio, moved to compel fingerprint and hair samples from petitioner.[1] In support of his motion to compel, defendant Serio asserted that the crime scene was substantially changed after the crime had been committed and that there were numerous unmatched fingerprints and hairs from the crime scene. The defendant's argument is that someone may have altered the crime scene after the murder and that petitioner may have been the individual. However, petitioner asserts that the allegations of her presence are unsubstantiated and pure speculation.
Although the precise issue involved here, compelling a witness to give hair samples, has not been previously decided in the courts of this state, we need look no farther than the supreme court's decision in Smith v. State, 260 So.2d 489 (Fla. 1972) to resolve the issue. Our supreme court in Smith held that a trial court was without authority to order eyewitnesses, who might be used by the state for identification of persons involved in crimes, to be examined for visual acuity. Although the state's case in Smith depended upon the witnesses' identification of the defendants, and the examination for visual acuity was arguably essential to the defendants' ability to impeach the witnesses as part of the defense, the supreme court held that:
No right is held more sacred, or is more carefully guarded, by the common law, than the right of an individual to the possession and control of his own person, free from all restraint or interference of others, unless by clear and unquestionable authority of law. Union Pacific Railroad Company *1042 v. Botsford, 141 U.S. 250, 11 S.Ct. 1000 35 L.Ed. 734 (1891). The common law does not authorize a court to require the physical examination of a witness, because discovery in criminal cases was unknown to the common law. See State v. Lampp, 155 So.2d 10 (Fla.App. 2d, 1963). Pursuant to the authority of Fla. Const. art. V. § 3, this Court has adopted rules of procedure governing criminal trials in this State. These rules include certain provisions relating to discovery in criminal cases. See Florida Rules of Criminal Procedure, Rule 3.220, 33 F.S.A. Nothing contained in these rules purports to authorize a trial court to grant a motion compelling witnesses to submit to a physical examination of any sort.
Id. at 491. While the supreme court held open the possibility that there may be "some rare instance" where "justice may require some type of physical examination of a witness," the facts presented in Smith did not compel an intrusion into the right of an individual to the possession and control of his own person. Id. Smith involved only a test for visual acuity, a more limited invasion than the request here. After Smith, our constitution was amended to grant citizens of this state a right to privacy, Art. 1, § 23, Fla. Const., which lends additional support for petitioner's argument.
In State v. Diamond, 553 So.2d 1185 (Fla. 1st DCA 1988), a plurality of the First District sitting en banc reaffirmed the vitality of Smith, in a case involving a physical examination of a victim of a sexual battery:
The Supreme Court's strong language in Smith must be looked upon as a firm warning to those who would feel moved to lead the jurisprudence of our state into uncharted waters by creating, via spontaneous generation, a criminal defense right to have crime victims or witnesses subjected to physical examinations.
Id. at 1194 (Nimmons, J., concurring).
Although the prosecution has a duty under the due process clause to disclose evidence favorable to the defendant upon request, Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), "there is no general constitutional right to discovery in a criminal case." Weatherford v. Bursey, 429 U.S. 545, 559, 97 S.Ct. 837, 846, 51 L.Ed.2d 30 (1977). This case does not involve the failure to produce evidence in existence or the destruction of previously existing evidence. It involves a request by a defendant that evidence be extracted from the body of a witness. No criminal rule of procedure or statute specifically authorizes samples to be taken from witnesses or authorizes physical examinations of witnesses. We do not read Florida Rule of Criminal Procedure 3.220(f), which allows a court to "require such other discovery to the parties as justice may require," to permit an invasion into a witness' privacy rights. In addition, rule 3.220(e) permits courts to restrict or deny disclosure of any information if unnecessary annoyance or embarrassment outweighs the usefulness of the disclosure.
While rule 3.220(c) specifically provides that a judicial officer may require the accused to submit samples of blood, hair and other materials from the accused's body, even that criminal rule is properly invoked only after an information or indictment has been filed against the person from whom the samples are sought, and the rule is still subject to constitutional limitations. See Hayes v. Florida, 470 U.S. 811, 105 S.Ct. 1643, 84 L.Ed.2d 705 (1985); Saracusa v. State, 528 So.2d 520 (Fla. 4th DCA 1988). In Saracusa, this court found the defendant's constitutional rights were violated by compelling the defendant to appear in a live lineup and submit to a blood test in connection with an investigation of several crimes unrelated to the charges for which he was being held, where there was no finding of probable cause as to the defendant's involvement in the unrelated crimes.
Certainly a witness, who is not a suspect, defendant or victim, should have no less protection against bodily intrusion than defendants or suspects in criminal cases.[2] Although *1043 this case involves a defendant's request for evidence, nevertheless, a witness is still protected by the guarantees under Art. I, sec. 12 of the Florida Constitution and the Fourth Amendment to the United States Constitution, as well as constitutional rights to privacy guaranteed by the Florida Constitution and the United States Constitution.
This court has also quashed orders requiring physical examinations of victims of sex crimes on each occasion when confronted with the issue, placing a heavy burden on the defendant to show that extreme and compelling circumstances exist, and that a manifest injustice, resulting in a denial of due process, would occur unless the testing is compelled. State v. Farr, 558 So.2d 437, 438 (Fla. 4th DCA 1990); State v. Drab, 546 So.2d 54 (Fla. 4th DCA), rev. denied, 553 So.2d 1164 (Fla. 1989).[3]
There has been no evidence presented by the defendant that compelling the hair samples, as a method of identifying the petitioner as present at the crime scene after the murder, is essential to protect his due process rights or otherwise necessary to prevent a manifest injustice. See Farr, 558 So.2d at 438 (Warner, J., concurring).[4] We also have serious questions about the authority of the trial court to compel the taking of samples from a witness based solely on the filing of an unverified motion to compel without evidentiary support.
The circumstances presented here do not constitute a "rare instance" where justice may require an invasion of a witness' privacy rights or an invasion of her Fourth Amendment rights. Accordingly, the trial court's order constitutes a departure from the essential requirements of the law. We grant certiorari and quash the order under review.
HERSEY and KLEIN, JJ., concur.
NOTES
[1] Petitioner voluntarily gave her fingerprints, rendering that part of the order moot, but protests the order which compels her to submit her body for extraction of hair samples, contending that multiple hair samples must necessarily be plucked from her head and pubic region. Neither the motion to compel nor the order specify the extent of the invasion or set limitations.
[2] In a 1992 decision from the Supreme Court of South Carolina, the court vacated a trial court's order permitting the government to obtain samples of blood, saliva, and pubic and head hair from a girlfriend of the defendant, finding that allowing the government to procure evidence from a person's body constitutes a search and seizure under the Fourth Amendment. State v. Register, 419 S.E.2d 771 (S.C. 1992). The court found that a witness, who is not a suspect, defendant, victim or material witness to the crime, had the "same Fourth Amendment protection against governmental intrusion into their bodies that defendants or suspects in criminal cases have." Id. at 772.
[3] Since the decisions in Farr and Drab, several state supreme courts have applied a compelling need analysis to defense requests for physical examinations of the victim of a sexual crime, including a multiple factor-based balancing approach. See, e.g. State v. Barone, 852 S.W.2d 216, 220-223 (Tenn. 1993); State v. D.R.H., 127 N.J. 249, 604 A.2d 89 (1992); State v. Delaney, 187 W. Va. 212, 417 S.E.2d 903 (1992); People v. Chard, 808 P.2d 351 (Colo. 1991). Interestingly, despite the apparent flexibility of the standard, in almost all reported cases requests for physical examinations of the victim has been denied under one rationale or another. It has been suggested by one commentator that, not only is a defense examination of the victim not required by the United States Supreme Court's due process analysis, but in fact it should be prohibited by the Court's Fourth Amendment guarantee against unreasonable searches. Note, A Fourth Amendment Approach to Compulsory Physical Examinations of Sex Offense Victims, 57 U.Chi. L.Rev. 873 (1990).
[4] Petitioner points out multiple concerns about the scientific reliability of identifying an individual through hair samples, especially when attempting to match the hair samples of a 76 year old woman with hair samples taken from the crime scene 10 years ago. The defendant presented no scientific evidence in support of his request to the trial court. Thus there are legitimate questions about the probative nature of the request. See State v. Brewster, 601 So.2d 1289 (Fla. 5th DCA 1992). (No compelling need for victim to submit to an HIV test, especially in light of question about probative value of test results under the factual circumstances.)