625 S.E.2d 216

**The STATE, Respondent,**

v.

**John Roosevelt BACCUS, Appellant.**

**No. 26094.**

Supreme Court of South Carolina.

Heard Nov. 30, 2005.

Decided Jan. 9, 2006.

42

44

Assistant Appellate Defender Robert M. Dudek, of the South Carolina Office of Appellant Defense, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Derrick K. McFarland, all of Columbia; and Solicitor Edgar L. Clements, III, of Florence, for Respondent.

Justice BURNETT:

John Roosevelt Baccus (Appellant) was convicted of murder and burglary in the first degree in connection with the shooting death of Brenda Kay Godbolt (victim), his former girlfriend. Appellant was sentenced to life imprisonment without parole on the murder charge and life imprisonment for the burglary charge, to be served concurrently. We certified his

appeal from the Court of Appeals, pursuant to Rule 204(b), SCACR. We affirm.

## FACTUAL/PROCEDURAL BACKGROUND

On November 14, 1999, the victim and her four-year old son were at her residence in Marion County. Victim and her friend, Priscilla Ham, talked at length during two telephone conversations. During the second conversation the victim began screaming. Ham testified the victim screamed, "John was here." Ham further testified she heard Appellant say, "I'm gonna kill your ass." She then heard a pop and clicking sound. Ham reported the incident to 911.

At trial, Dr. Erin Presnell, an expert in forensic pathology, testified the victim received two gunshot wounds to her body, one on her left cheek and one on her neck. Death resulted from the gunshot wound to the cheek.

At a pretrial suppression hearing and at trial, Officer Von Turbeville testified he arrived on the scene in the early morning hours of November 15, 1999, where he met with other officers and called Ham. Ham relayed to Turbeville her phone conversation with the victim and what she had overheard. Ham told him the victim said Appellant was coming through the window. She also gave him Appellant's name, his address in Florence County, and the type of car he had been driving. Turbeville relayed this information to Officer Barry Prosser of the Florence County Sheriff's Department.

Prosser testified at trial and at the suppression hearing that he went to Appellant's residence, where he knocked on the door but received no response. Prosser observed a car parked at a convenience store about one-fourth of a mile from Appellant's house that matched the description of the car Appellant had been driving. He noticed a "red substance" on the car and inside it. He also observed a smoldering burn pile containing clothing and shoes in Appellant's back yard. He testified he knocked on the door again and Appellant answered. Prosser advised Appellant he was investigating an incident in Marion County, and Appellant was arrested.

At the pretrial suppression hearing, Turbeville testified he gave Officer Amber McDaniel of the Florence County Sheriff's Department information to obtain a search warrant for Appel-

lant's residence. At a subsequent pretrial suppression hearing, McDaniel testified Turbeville told her about a homicide in Marion County; that Prosser had arrested Appellant, a suspect, in Florence County; that there was a burn pile with clothing outside Appellant's residence and that a vehicle Appellant was allegedly driving appeared to have blood stains in it.

McDaniel completed an affidavit for a search warrant with the information Turbeville supplied. She testified she did not know any particulars regarding the homicide at the time she requested a search warrant; specifically, she did not know why Appellant was a suspect. Additionally, she told the magistrate she had received a phone call from Turbeville regarding a homicide and Appellant had been arrested. She did not remember telling the magistrate anything not contained in the affidavit for the search warrant. Upon executing the search warrant, clothing, shoes, and a key to a vehicle were seized from Appellant's residence.

Prior to trial, the State petitioned the circuit court and the court issued an order directing Appellant to provide a blood sample for testing and comparison purposes. Blood was drawn from Appellant pursuant to the order.

The State presented the testimony of Michelle Dixon, who was qualified as an expert in latent prints, blood spatter, and crime scene reconstruction. During her initial walk-through of the victim's house, Dixon testified she found the victim in the rear bedroom where a window had been broken. She observed bloody footwear impressions from the bedroom to the side door of the residence. She testified during the process of entering the window the suspect was cut. She also testified fingerprints found in the window sill matched Appellant's fingerprints.

John Black testified as an expert in crime scene analysis, fingerprints, blood, and footwear impressions. He testified the shoes seized from Appellant's house matched the bloody shoeprints in the victim's house.

Dr. Steve Lambert testified at trial as an expert in DNA and serological analysis. Lambert testified he compared Appellant's blood, drawn pursuant to a court order, with evidence found in the victim's home. Lambert testified DNA testing

and blood comparison revealed Appellant's blood matched blood found on the kitchen door, a bed sheet, and a blind in the bedroom where the victim was found. He also testified that on the night of Appellant's arrest a blood swab was taken from a cut on Appellant's left palm. The blood from that swabbing also matched the blood on the door, sheet, and blind.

During the suppression hearing and again during trial, Appellant moved to suppress evidence on the following grounds: (1) any evidence obtained by the State as a result of Appellant's warrantless arrest because the arresting officer lacked probable cause; (2) any evidence obtained by the search warrant because the affidavit accompanying the search warrant lacked probable cause; and (3) blood evidence drawn pursuant to a court order and implicating Appellant in the crime because the bodily intrusion was an unlawful search and seizure. The trial judge denied the motions.

### ISSUES

I. Did the trial court err in admitting evidence emanating from Appellant's arrest because the police officer did not have probable cause to arrest him?

II. Did the trial court err in admitting evidence seized from Appellant's residence because the police affidavit which accompanied the search warrant did not support a finding of probable cause?

III. Did the trial court err in refusing to suppress blood evidence implicating Appellant in the crimes which was obtained in violation of his constitutional and statutory rights?

### STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Wilson*, 345 S.C. 1, 5, 545 S.E.2d 827, 829 (2001). This Court is bound by the trial court's factual findings unless they are clearly erroneous. *State v. Quattlebaum*, 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000). The trial judge's factual findings on whether evidence should be suppressed due to a Fourth Amendment violation are reviewed for clear error. *State v. Brockman*, 339 S.C. 57, 66,

528 S.E.2d 661, 665–66 (2000) (a private search is a question of fact and the trial court's ruling will be reversed only if there is clear error).

## *LAW/ANALYSIS*

### I. Arrest

■ Appellant argues the trial court erred by refusing to suppress evidence seized emanating from his arrest. Appellant contends his arrest was illegal because officers arrested him without a warrant and without probable cause. Appellant argues his fingerprints and blood, which were taken at the jail after his allegedly illegal arrest, should be suppressed as the fruit of the poisonous tree. *See Wong Sun v. United States,* 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We disagree.

■ The fundamental question in determining the lawfulness of an arrest is whether probable cause existed to make the arrest. Probable cause for a warrantless arrest exists when the circumstances within the arresting officer's knowledge are sufficient to lead a reasonable person to believe that a crime has been committed by the person being arrested. *State v. George,* 323 S.C. 496, 509, 476 S.E.2d 903, 911 (1996) (finding probable cause for warrantless arrest for murder). Whether probable cause exists depends upon the totality of the circumstances surrounding the information at the officer's disposal. *Id.*; *see also Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142 (1964) (a court must consider "whether, at the moment the arrest was made, the officers had probable cause to make it—whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [Appellant] had committed . . . an offense.").

We conclude Prosser had probable cause to make the warrantless arrest based on the information he received from Turbeville and his own observations at Appellant's residence. Turbeville testified he relayed to Prosser information he received from Ham. Prosser testified Turbeville informed him of a homicide and information related to that homicide. He knew Appellant was a suspect in the homicide. He also

observed a red substance on the inside and outside of a car matching the description of the car Appellant had been driving. He saw a burn pile containing shoes and clothing in Appellant's backyard. The trial judge properly admitted evidence emanating from Appellant's warrantless arrest.

## II. Search Warrant

■ Appellant argues the trial court erred by refusing to suppress evidence seized from his residence pursuant to a search warrant. Appellant contends the search warrant was not supported by probable cause, and the shoes, clothing, and key seized should have been excluded from trial.[1] We agree.

■ A search warrant may issue only upon a finding of probable cause. *State v. Bellamy*, 336 S.C. 140, 143, 519 S.E.2d 347, 348 (1999). The duty of the reviewing court is to ensure the issuing magistrate had a substantial basis upon which to conclude that probable cause existed. *State v. Adams*, 291 S.C. 132, 352 S.E.2d 483 (1987). In *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 2332, 76 L.Ed.2d 527 (1983), the United States Supreme Court adopted a "totality-of-the-circumstances" test for probable cause determinations:

> The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place.

■ In South Carolina, search warrants may be issued "only upon affidavit sworn to before the magistrate ... establishing the grounds for the warrant." S.C.Code Ann. § 17–13–140 (2003); *see also State v. McKnight*, 291 S.C. 110, 352 S.E.2d 471 (1987). The affidavit must set forth particular

---

1. At trial, Appellant also argued the search warrant should be suppressed because the warrant predated the crime and the warrant did not have the exact date and time of issuance and return. The trial judge denied the motion to suppress on this ground. Appellant has abandoned this argument on appeal. *See State v. Hiott*, 276 S.C. 72, 276 S.E.2d 163 (1981); Rule 208(b)(1)(B), (D), SCACR (issue not argued in brief is deemed abandoned and precludes consideration on appeal).

facts and circumstances underlying the existence of probable cause to allow the magistrate to make an independent evaluation of the matter. *Franks v. Delaware,* 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

In *State v. Smith,* 301 S.C. 371, 392 S.E.2d 182 (1990), Smith moved to suppress a knife, allegedly used in a robbery, which was seized from his motel room pursuant to a search warrant. In determining whether the issuing magistrate had a substantial basis to conclude probable cause existed, this Court considered the following affidavit accompanying a search warrant:

> That on May 12th at approximately 11:45 p.m. Reginald Jerome Smith went into the Master Inn located at 1468 Savannah Hwy., Charleston, S.C. and he then robbed the manager at knife point. Smith has been staying at the Host of America Room 216 since Jan. 1, 1988 and there is every reason to believe the weapon and clothes used in the robbery will be located in the room. This information was confirmed in person by Sgt. Sherman on 05/13/88.

*Id.* at 372, 392 S.E.2d at 183. We held that the affidavit was defective because it "set[ ] forth no facts as to *why* police believed Smith robbed the Master Host Inn." *Id.* at 373, 392 S.E.2d at 183. We further found, "Mere conclusory statements which give the magistrate no basis to make a judgment regarding probable cause are insufficient." *Id. See also State v. Weston,* 329 S.C. 287, 494 S.E.2d 801 (1997) (an affidavit supporting a search warrant could not have provided a substantial basis for finding probable cause to search Weston's car when the affidavit failed to set forth any facts as to why police believed Weston committed the crime and the first three sentences of the affidavit contained conclusory statements).

In the present case, the affidavit in support of the search warrant for Appellant's residence read:

> DESCRIPTION OF PROPERTY SOUGHT
>
> Any evidence such as: clothing, shoes, weapons, or forensics evidence such as blood. Which maybe connected with the Homicide of Brenda K. Godbolt which occurred in Marion County....
>
> REASON FOR AFFIANT'S BELIEF THAT THE PROPERTY SOUGHT IS ON THE SUBJECT PREMISES

At the time of the suspects (sic) arrest at 2616 Alligator Rd. in Florence County, by Investigators Barry Prosser and Von Dean Turbeville with Florence and Marion County Sheriff's Office. A pile of what appeared to be clothing was lying on the ground beside the residence smoldering in plain view, and a vehicle the suspect was apparently driving was located approximately ¼ of a mile from this residence with blood stains on the inside and outside of the vehicle.

This affidavit fails to set forth any facts as to why police believed Appellant committed the crime. The language in the affidavit lacks specificity and contains conclusory statements. Given the totality of the circumstances, we conclude the issuing magistrate did not have a substantial basis to find probable cause for a search of Appellant's residence, and the trial court erred in admitting evidence seized pursuant to the search warrant.

### III. Bodily Intrusion

Appellant argues the trial court erred by refusing to suppress blood evidence implicating him in the crime. Specifically, Appellant contends the court order compelling a blood sample violated the Fourth Amendment of the United States Constitution, S.C.Code Ann. § 17–13–140, and *Schmerber v. California*, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966). We agree.

Appellant argues the petition and order do not meet constitutional or statutory requirements because there was no sworn testimony, warrant, or affidavit showing probable cause that a search of Appellant's body would produce admissible evidence. The State asserts Appellant consented to have his blood drawn and tested by filing a motion to compel evidence under a previously filed *Brady*[2] motion. The State further contends if the search is deemed nonconsensual, then the search was valid because the petition and order were the functional equivalent of a search warrant.

The State's assertion that Appellant consented to a search is without merit. A defendant does not consent to a search and seizure by filing a *Brady* motion.

---

2. *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

 The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. An order issued pursuant to § 17–13–140 that allows the government to procure evidence from a person's body constitutes a search and seizure under the Fourth Amendment. *Schmerber*, 384 U.S. at 767–70, 86 S.Ct. at 1834–35; *State v. Register*, 308 S.C. 534, 419 S.E.2d 771 (1992). The Fourth Amendment protects against intrusions into the human body for the taking of evidence absent a warrant unless there are exigent circumstances, such as the imminent destruction of evidence. *Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1835; *see also State v. Dupree*, 319 S.C. 454, 462 S.E.2d 279 (1995) (applying *Schmerber* analysis to search of suspect's mouth). Where blood is needed only to determine blood type to match existing evidence, a warrant must be obtained even though there has been a lawful arrest. *Gantt v. State*, 354 S.C. 183, 580 S.E.2d 133 (2003).

 A court order issued pursuant to § 17–13–140 that allows the government to procure evidence from a person's body must comply with constitutional and statutory guidelines. *Schmerber*, 384 U.S. at 769–70, 86 S.Ct. at 1835; *In re Snyder*, 308 S.C. 192, 417 S.E.2d 572, (1992); *Register*, 308 S.C. at 537, 419 S.E.2d at 772. In *Snyder*, we stated:

Section 17–13–140 covers "the issuance, execution and return of search warrants for property connected with the commission of crime ..." Subsection (4) provides for the issuance of a search warrant for *"property* constituting evidence of crime or *tending to show that a particular person committed a criminal offense."* Under this court's construction, "property" as used in Section 17–13–140, encompasses nontestimonial identification evidence.

Respondents next assert that Section 17–13–140 contains no guidelines and procedures for obtaining nontestimonial identification evidence. However, guidelines and procedures for acquiring such evidence were promulgated in the case of *In re an Investigation into the Death of Abe A.*, 56 N.Y.2d 288, 452 N.Y.S.2d 6, 7, 437 N.E.2d 265, 266 (1982). *David M. v. Dwyer*, 484 N.Y.S.2d 323, 107 A.D.2d 884 (1985) [citing *Matter of Abe A., supra.*] established considerations for determining whether or not there exists probable cause to

permit the acquisition of such evidence. These elements are:

(1) probable cause to believe the suspect has committed the crime,

(2) a clear indication that relevant material evidence will be found, and

(3) the method used to secure it is safe and reliable.

Additional factors to be weighed are the seriousness of the crime and the importance of the evidence to the investigation. The judge is required to balance the necessity for acquiring involuntary nontestimonial identification evidence against constitutional safeguards prohibiting unreasonable bodily intrusions, searches, and seizures. *Id.* . . .

We construe Section 17–13–140 to provide for the involuntary submission of nontestimonial identification evidence. Further, this Court holds that upon a sufficient showing of probable cause for the issuance of an order, a court may order that such evidence be obtained from unarrested suspects within guidelines mandated under the statutory provisions, case law, and Constitutional laws of this State and of the United States.

308 S.C. at 195–96, 417 S.E.2d at 573–74; *see also Register,* 308 S.C. at 537–38, 419 S.E.2d at 773 (setting forth essentially the same considerations for a warrant or order compelling a bodily intrusion into a potential witness).

■ The facts of the present case are similar to *Snyder* and *Register* because the Fourth Amendment protections apply even when an individual has been arrested and indicted. *See Gantt,* 354 S.C. at 187, 580 S.E.2d at 135 ("A lawful arrest does not in itself justify a warrantless search that requires bodily intrusion."). Therefore, a court order allowing the State to procure evidence from an arrested and indicted suspect must meet statutory and constitutional guidelines.

■ Under both the United States and South Carolina constitutions, search warrants may not be issued except "upon probable cause, supported by Oath or affirmation." U.S. Const. amend. IV; S.C. Const. art. I, § 10. Following these constitutional requirements, § 17–13–140 requires a sworn affidavit for a search warrant to be issued. A court order

issued pursuant to § 17–13–140, which stands in place of a search warrant, should only be issued upon a finding of probable cause, which is supported by oath or affirmation.[3] Nothing in the record suggests the court order was issued upon a finding of probable cause supported by oath or affirmation. Furthermore, exigent circumstances did not exist to justify a bodily intrusion without a warrant or order issued under § 17–13–140. *Compare Schmerber,* 384 U.S. at 770–71, 86 S.Ct. at 1826 (exigent circumstances existed when testing for blood alcohol level, which is considered subject to imminent destruction). We conclude the trial judge erred in refusing to suppress evidence of Appellant's blood because the order fails to comply with constitutional and statutory requirements. *See State v. Khingratsaiphon,* 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002) ("Evidence seized in violation of the Fourth Amendment must be excluded from trial.").

 Having found error, we must ask what other evidence was considered besides the evidence entered in error. *State v. Parker,* 315 S.C. 230, 433 S.E.2d 831 (1993); *see also* Rule 220(c), SCACR (on appeal this court may affirm on any ground contained in the record). When guilt is conclusively proven by competent evidence, such that no other rational conclusion could be reached, this Court will not set aside a conviction for insubstantial errors not affecting the result. *State v. Livingston,* 282 S.C. 1, 317 S.E.2d 129 (1984).

The State presented the testimony of Ham who overheard Appellant tell the victim he was going to kill her and who overheard a pop and clicking sound. Additionally, the State presented evidence that Appellant's fingerprints matched fingerprints on the window sill of the broken window in the victim's bedroom. Also, Dr. Lambert testified the blood sample collected from Appellant on the night of his arrest matched the blood found on the swabs and cuttings from the door, blind, and sheet in the victim's house. Therefore, the blood evidence drawn pursuant to the court order which should have been excluded was cumulative. *See State v. Haselden,* 353 S.C. 190, 577 S.E.2d 445 (2003) (admission of improper evidence is harmless where the evidence is merely cumulative to

---

**3.** Appellant argues a search warrant must also be issued, but in *Snyder* and *Register* we recognized a court order may be issued under § 17–13–140 instead of a search warrant.

other evidence.); *State v. Schumpert*, 312 S.C. 502, 435 S.E.2d 859 (1993) (any error in admission of evidence cumulative to other unobjected-to evidence is harmless). After reviewing the entire record, we find the errors in admitting evidence from the search warrant and the court order were harmless. *See State v. Pickens*, 320 S.C. 528, 466 S.E.2d 364 (1996) ("[W]here a review of the entire record establishes the error is harmless beyond a reasonable doubt, the conviction should not be reversed.").

## *CONCLUSION*

The trial judge properly admitted evidence emanating from Appellant's warrantless arrest. However, the trial judge erred in admitting evidence seized from Appellant's residence pursuant to the search warrant and in admitting blood evidence drawn by court order. However, we conclude these errors were harmless and we affirm Appellant's convictions.

**AFFIRMED.**

TOAL, C.J., MOORE, PLEICONES, JJ., and Acting Justice J. ERNEST KINARD, JR., concur.