730 S.E.2d 909

**The STATE, Respondent,**

v.

**Otis Lamar BLAND, Jr., Appellant.**

**Appellate Case No. 2010–162206.**

**No. 5002.**

Court of Appeals of South Carolina.

Heard Feb. 15, 2012.

Decided July 18, 2012.

Deputy Chief Appellate Defender Wanda H. Carter, South Carolina Commission on Indigent Defense, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Attorney General Mark Reynolds Farthing, all of Columbia, and Solicitor Jerry W. Peace, of Greenwood, for Respondent.

THOMAS, J.

Otis Lamar Bland appeals his convictions for attempted armed robbery, attempted burglary, and possession of a weapon during the commission of a violent crime. We affirm.

**FACTS AND PROCEDURAL HISTORY**

During the late afternoon or early evening of February 23, 2009, Joan Hughes was at her mother's home in Greenwood, South Carolina. Someone knocked on the door and Hughes answered. A short, thin man whom Hughes recognized only by sight offered to rake leaves. Hughes closed the door to ask her mother if she wanted leaves raked, and her mother instructed Hughes to ask the man if he was "Otis' son." Hughes went back to the door to ask the question. From the corner of her eye, she saw another man come from behind her

mother's car. The second man ran toward her, waving a gun, and Hughes shut the door. Hughes was able to give only a general description of his build and clothing. Hughes had to struggle to close the door and did not know which of the two men attempted to prevent her from doing so.

Around 8:00 p.m. that same day, Isabel Martin, upon arriving at her home, was approached by two men as she exited her car. One of them, who wore a bandanna across his face, stuck a gun to her temple and demanded her pocketbook. Martin obeyed and made eye contact with her assailant when she handed him her pocketbook. Because the streetlight was shining, Martin could see her assailant and remembered his build and eyes, as well as certain mannerisms. The other man, whom Martin described as shorter and heavier than the man who took her pocketbook, was farther away from her.

That same evening, Greenwood County Sheriff's Deputy Mitchell Mathis went to the area where the incidents took place to assist with the bloodhound team. His role was to stop and identify people entering or leaving the area on foot or by car. Although there was little foot traffic, Martin observed two individuals, later identified as Bland and James Ware, walking together. Mathis informed Detective Christopher Haden about his observation of Bland and Ware. Several neighborhood residents also reported to Haden that they had seen Bland in the area with two other persons.

Haden encountered Bland the next day, and Bland agreed to come to the Sheriff's Office to speak further. Eventually, after receiving *Miranda* warnings, Bland gave an oral tape-recorded statement and a signed written statement. In the written statement, Bland admitted the following: he, Ware, and Kiersten Martin[1] went to the home of Hughes' mother. There, he remained in the backyard while Ware went to the door to offer to do yard work. When Hughes asked Ware if he was Otis' son, Ware unsuccessfully tried to force his way into the house, but Hughes slammed the door shut quickly enough to prevent him from doing so. Ware and Kiersten Martin then said they would "try a nother one" [sic], but he did not accompany them when they robbed Isabel Martin.

---

1. The record does not indicate that Kiersten Martin was related to Victim Isabel Martin.

The following day, James Ware and Kiersten Martin gave statements to Haden. Based on this information, Haden obtained arrest warrants for Bland, Ware, and Kiersten Martin.

A few days after the incident, the Sheriff's Office showed Hughes a photo lineup in order to determine whether she could identify either the person at the door or the person running from behind her mother's car. Hughes could not identify either individual in the lineup because of the poor quality of the images.

In June 2009, Bland was indicted on two counts of possession of a weapon during the commission of a violent crime. During the same term, the grand jury also indicted him for armed robbery of Isabel Martin, attempted burglary of the home of Hughes' mother, and attempted armed robbery of Hughes. The indictment for attempted burglary was *nol prossed,* but was replaced by another indictment on March 26, 2010, for attempted first-degree burglary.

A jury trial on all charges took place on May 18, 2010. Both Ware and Kiersten Martin appeared as witnesses for the State. Ware testified that after he knocked on the door of the house of Hughes' mother, Bland "came around with the gun and the lady had shut the door." Ware also testified that Bland took Isabel Martin's pocketbook after pointing a gun at her. Kiersten Martin testified about the premeditated nature of the attempt to force entry into the home of Hughes' mother and corroborated Ware's testimony that Bland approached Isabel Martin with a gun and took her pocketbook.

Haden testified Hughes was shown a photo lineup and admitted the lineup was now missing from the case file. Although he did not know whether Bland's picture was included in the lineup, he also testified that Hughes never said she would have been able to identify the person with the gun and could provide only a general description of him. Hughes corroborated this testimony, stating only that this person wore dark clothing, was tall and thin, and carried a large gun. On cross-examination, Hughes asserted she did not know whether any of the subjects depicted in the photo lineup could have been Bland. Martin, who was not shown a photo lineup, pointed Bland out to the jury.

At the close of the testimony, the defense made various directed verdict motions and requested to have the charges against Bland dismissed because of the missing lineup. The trial court denied these motions.

The jury convicted Bland on one count of possession of a weapon during the commission of a violent crime, attempted armed robbery, and attempted first-degree burglary. Hughes was the prosecution's main witness for these three charges. Bland was acquitted of the armed robbery charge and the remaining count of possession of a weapon during the commission of a violent crime, both of which involved Isabel Martin. The trial court sentenced Bland to concurrent terms of twenty years on the attempted armed robbery and attempted first-degree burglary charges and a consecutive five-year sentence on the weapons charge. Bland then filed this appeal.

## ISSUE

Did the trial court err in refusing to dismiss the charges against Bland on the grounds that the State mishandled the photo lineup and the possibility that the lineup contained exculpatory information favorable to Bland's defense at trial?

## STANDARD OF REVIEW

"In criminal cases, the appellate court sits to review errors of law only." *State v. Baccus,* 367 S.C. 41, 48, 625 S.E.2d 216, 220 (2006). The reviewing court is bound by the trial court's findings of fact unless they are clearly erroneous. *Id.*

## LAW/ANALYSIS

Bland argues the charges against him should have been dismissed because the State's inability to produce the photo lineup amounted to a due process violation that deprived him of his right to present a complete defense. We disagree.

The South Carolina Supreme Court has stated the following on the issue of preservation of evidence:

The State does not have an absolute duty to preserve potentially useful evidence that might exonerate a defendant. To establish a due process violation, a defendant must demonstrate (1) that the State destroyed the evidence in bad faith, *or* (2) that the evidence possessed an exculpatory value apparent before the evidence was destroyed *and*

the defendant cannot obtain other evidence of comparable value by other means.

*State v. Cheeseboro*, 346 S.C. 526, 538–39, 552 S.E.2d 300, 307 (2001) (citations omitted) (emphasis added).

Here, Bland made no attempt to argue the State destroyed the lineup in bad faith. The question before us, then, is whether Bland demonstrated (1) the lineup possessed an exculpatory value apparent before it was lost and (2) he could not obtain other evidence of comparable value by other means. Unless he satisfied both requirements of the second prong, he failed to establish a due process violation.

We agree with the State that Bland failed to establish that the lineup possessed an exculpatory value that was apparent before it was lost. At trial, Haden testified he did not know who compiled the photographs for the lineup and no one knew whose images were included.[2] More important, however, is Hughes' testimony that the poor quality of the photographs prevented her from identifying anyone in the lineup as either of the two individuals she encountered during the incident even though she had indicated she might have been able to identify the person with whom she spoke at her mother's door. She testified that in her haste to close the door, all she noticed about the other man was his clothing, his build, and his gun. When asked by Bland if "his picture was one of those on that piece of paper," she responded that she did not know. Whether or not the missing layout included Bland's picture, when considered with Hughes' undisputed inability to make a positive identification of anyone involved in the attempted burglary either before or during trial, it was not exculpatory evidence. *Cf. Porter v. State*, 368 S.C. 378, 384, 629 S.E.2d 353, 357 (2006) (holding the fact that a witness did not identify the defendant at the crime scene was not material exculpatory evidence in view of other evidence of his guilt); *Clark v. State,*

---

**2.** At trial, Bland suggested he should not be penalized for the State's inability to verify whether or not a picture of him was included in the lineup, arguing "it wasn't his job to keep up with this evidence." We do not suggest here that a defendant seeking to show a due process violation through the State's loss of evidence should be required to present information available only from the State if the State cannot provide it. Rather, we hold that regardless of whether Bland's picture appeared in the lineup, the circumstances of this case are such that the lineup did not have exculpatory value.

315 S.C. 385, 388, 434 S.E.2d 266, 268 (1993) ("[E]xculpatory evidence is material only if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.").

The State further argues that Bland did not establish that he could not have obtained other evidence of comparable value and that any error resulting from the loss of the photographic lineup was harmless in view of other evidence presented. Because, however, our holding that Bland failed to demonstrate that the lineup had exculpatory value is sufficient to uphold his convictions, we decline to address these arguments. *See Futch v. McAllister Towing of Georgetown, Inc.*, 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (providing an appellate court need not address all issues on appeal when its decision on one issue is dispositive).

**AFFIRMED.**

WILLIAMS and LOCKEMY, JJ., concur.